Evan Ghaffari, CA Bar No. 337928
eghaffari@forthepeople.com
MORGAN & MORGAN P.A.
633 West 5th Street, Suite 2200
Los Angeles, CA 90071
T: (213) 787-8589; F: (213) 418-3982
*Counsel for Plaintiffs*
*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| Forrest Sawlaw and William Sholy, as the representatives of a class of similarly situated persons, and on behalf of the Hollandia Produce Group, Inc. Employee Stock Ownership Plan,<br><br>        Plaintiffs,<br><br>   v.<br><br>Mosaic Capital Investors I, LP, True West Capital Partners Fund II, L.P., Keith Butcher, Michael Zeller, Ian Mohler, Iain Douglas, Moore & Van Allen PLLC, and GreatBanc Trust Company,<br><br>        Defendants. | Case No. 2:25-cv-02156 AH (PDx)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>(1) Violations of Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* |

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

## INTRODUCTION

1.     Plaintiffs Forrest Sawlaw and William Sholy, as the representatives of the Class described herein, and on behalf of the Hollandia Produce Group, Inc, Employee Stock Ownership Plan ("ESOP"), bring this action against Mosaic Capital Investors I, LP, True West Capital Partners Fund II, L.P., Keith Butcher, Michael Zeller, Ian Mohler, Iain Douglas (collectively, "Investor Defendants"), Moore & Van Allen PLLC, and GreatBanc Trust Company.

2.     As described herein, a cabal of lawyers and professional investors abused the ESOP for their own profit. GreatBanc failed to protect the ESOP from its co-Defendants. Defendants' greed and carelessness diminished the value of Hollandia workers' retirement accounts.

3.     Plaintiffs now sue Defendants under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*, ("ERISA") to recover stolen ESOP benefits and further remedy Defendants' unlawful conduct.

## JURISDICTION AND VENUE

4.     This case presents a federal question under ERISA and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e)(1).

5.     Venue is proper in this district because the ESOP was administered in this district and fiduciary breaches occurred in this district.

## PARTIES

### The ESOP

6.     The ESOP is an "employee benefit plan," as defined by 29 U.S.C. § 1002(3), initially sponsored by Hollandia Produce Group, Inc., a California corporation ("Hollandia"), and now sponsored by Hollandia's successor corporation of the same name, a Delaware corporation. The ESOP was established on December 21, 2015, and terminated on April 4, 2022 (the "ESOP period"). During the ESOP

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

period, Hollandia was the "administrator" of the ESOP pursuant to 29 U.S.C. § 1002(16)(A). Pending approval to distribute its assets, the ESOP continues to hold retirement accounts on behalf of Plaintiffs and 121 other current and former Hollandia employees.

## Plaintiffs

7.     Plaintiff Forrest Sawlaw is a natural person currently residing in Florida. He was Hollandia's General Manager of Operations between 2017 and 2023. He participated in the ESOP and currently has an account in the ESOP. Due to Defendants' misconduct, his ESOP account is worth less than it should be.

8.     Plaintiff Will Sholy is a natural person currently residing in California. He was a facilities manager at Hollandia between 2015 and 2018. He participated in the ESOP and received a distribution of his ESOP account in around 2020. Due to Defendants' misconduct, his ESOP distribution was less than it should have been.

## Defendants

9.     Defendant Mosaic Capital Investors I, LP ("Mosaic") is a limited partnership formed under Delaware law in 2013 and based in North Carolina. Mosaic is controlled by Mosaic Capital Investors LLC and its members, including Defendant Keith Butcher. Mosaic is the investment vehicle through which Defendants Keith Butcher, Ian Mohler, Michael Zeller, and their investment partners profited from their scheme to abuse the ESOP.

10.     Defendant True West Capital Partners Fund II, L.P. ("True West") is a limited partnership formed under Delaware law in 2015 and based in California. True West is controlled by True West Management Company, LLC and its members, including Defendant Iain Douglas. True West is the investment vehicle through which Defendant Iain Douglas and his investment partners profited from their scheme to abuse the ESOP.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

11.     Defendant Keith Butcher is a natural person currently residing in Florida. Butcher is a former tax attorney at the firm of Moore & Van Allen PLLC in North Carolina. Butcher is a founder of Mosaic and its related ESOP consulting firm ButcherJoseph & Co. ("ButcherJoseph"). Butcher controls Mosaic and ButcherJoseph directly or indirectly through affiliated companies or agreements. Butcher has an interest in the profits of Mosaic and ButcherJoseph either directly or indirectly through intermediate companies or trusts owned for the ultimate benefit of himself or members of his family.

12.     Defendant Michael Zeller is a natural person currently residing in North Carolina. Zeller is an ESOP attorney at the firm of Moore & Van Allen PLLC. He met Butcher there more than 25 years ago and has invested in Butcher's businesses including Mosaic and ButcherJoseph. Zeller has an interest in the profits of Mosaic and ButcherJoseph either directly or indirectly through intermediate companies or trusts owned for the ultimate benefit of himself or members of his family.

13.     Defendant Ian Mohler is a natural person currently residing in North Carolina. Mohler has an interest in the profits of Mosaic either directly or indirectly through intermediate companies or trusts owned for the ultimate benefit of himself or members of his family. Mohler was a director of Hollandia during the ESOP period and was assigned by Mosaic to represent Mosaic's interests on the Hollandia board.

14.     Defendant Iain Douglas is a natural person currently residing in California. Douglas is a founder of True West and controls True West directly or indirectly through affiliated companies or agreements. Douglas has an interest in the profits of True West either directly or indirectly through intermediate companies or trusts owned for the ultimate benefit of himself or members of his family. Douglas was a director of Hollandia during the ESOP period and was assigned by True West to represent True West's interests on the Hollandia board.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

15.    Defendant Moore & Van Allen PLLC ("MVA") is a North Carolina law firm that employed Zeller throughout the ESOP period.

16.    Defendant GreatBanc Trust Company ("GreatBanc") is an Illinois corporation headquartered in Lisle, Illinois. GreatBanc was the ESOP trustee throughout the ESOP period.

## DEFENDANTS' ABUSE OF THE ESOP

### Defendants' Scheme

17.    The ESOP was never for Hollandia's employees. The Investor Defendants are a cabal of lawyers and professional investors that identified the ESOP tax structure as a good platform for investing in small businesses. If an ESOP owns a company, the company and its owner pay no income tax, leaving more free cash flow for the company to grow. Although an ESOP company's tax-free growth is designed to provide retirement benefits for the company's workers, the Investor Defendants developed a scheme to capture an outsized portion of that growth for themselves.

18.    The Investor Defendants' point of entry to an ESOP company is its debt. The Investor Defendants loan money to ESOP companies, or advise clients and partners who do. But the Investor Defendants do not stop there. They obtain control of the ESOP company for themselves or their clients and then stack the deck against the ESOP through the price negotiation, loan terms, management of the loan, stock warrants, subsequent capital transactions, and the terms for their ultimate exit from the company.

19.    At each step, the Investor Defendants manufacture the appearance of ESOP independence. But that is their secret. The Investor Defendants are actually on both sides. The Investor Defendants install Zeller as the ESOP's legal counsel while concealing from the trustee Zeller's investment in Mosaic and ButcherJoseph. What follows is performative adversity calculated to create a paper record of independent advocacy for the ESOP's interests. Yet the big moves that shift value from the ESOP

-4-

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

to the Investor Defendants get a pass that no truly independent advocate of ESOP participants would allow. Through repetition of their scheme, the Investor Defendants call abusive ESOP deals "the market," concealing how that market was rigged.

20. The Investor Defendants' scheme is how the Hollandia ESOP owned 100% of Hollandia, sold it for $122.5 million, and got less than $1 million.

### Formation of the ESOP

21. Hollandia's predecessor companies were established in the 1970s by Dutch immigrants to grow and sell flowers in southern California. Their son oversaw a shift to produce in the 1980s and is the namesake of the company's flagship brand, Pete's Living Greens.

22. In the 2010s, Hollandia's founding family considered selling the business. During that process, the family met ButcherJoseph and Mosaic.[1] An essential component of the Investor Defendants' scheme is to convince small business owners to transfer their company to an ESOP.

23. The Investor Defendants' standard pitch touts the following benefits to small business owners of selling their company to an ESOP through the Investor Defendants: tax-favored treatment of sale proceeds, immediate liquidity, preserving the founder's legacy, and rewarding employees with a long-term benefit. The Investor Defendants represent to business owners that employees will have independent representation for the ESOP and that the Investor Defendants' aim is to provide employees a benefit that will last "in perpetuity."

24. On information and belief, the Investor Defendants made their standard pitch to the founding family of Hollandia around 2015. The family resolved to sell Hollandia to their 125 employees through an ESOP created by the Investor Defendants.

---

[1] ButcherJoseph is identified in Mosaic's press release announcing the Hollandia deal and, on information and belief, provided consulting services to Defendants in connection with Hollandia.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

25. The Investor Defendants did not disclose to the founding family that the ESOP would not, in fact, have independent representation. They further concealed that they would direct the company to maximize their own return on investment over the next seven years without concern for the ESOP's interests. They also did not disclose the substantial likelihood that the ESOP would be terminated in less than seven years without generating a meaningful retirement benefit for employees.

26. The Investor Defendants orchestrated the ESOP transition of Hollandia in all respects, including the price the ESOP would pay for Hollandia's stock, the terms on which the company would borrow cash from the Investor Defendants to finance the deal, and how the company would be governed during the ESOP period. These arrangements were finalized concurrently, each aspect of the deal contingent on the others, in a transaction that closed on December 21, 2015.

27. The price was $27 million. The ESOP received a loan from the company in that amount and used it to buy 100% of Hollandia's stock. The loan from the company to the ESOP required the company to make contributions to the ESOP each year in sufficient amounts to enable the ESOP to pay back the loan in equal annual installments over the next 39 years.

28. Initially, all shares of stock acquired by the ESOP were held in an unallocated account as collateral for the loan. As each of the 39 installment payments was made, a proportional number of shares would be released from the collateral account and allocated to the individual accounts of Hollandia workers in the ESOP.

29. Mosaic, True West, and two other firms loaned the company the cash to fund the transaction, and to re-finance the company's existing debt. The loans from Mosaic and True West were the largest, around $13 million each. Their loans called for interest to be "paid in kind" or "PIK." PIK interest adds to the principal balance of the loan. Mosaic's and True West's loans to Hollandia called for PIK interest to

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

increase the principal balance of the loans every month based on an annualized rate of 14%. The company had the option of paying the interest in cash instead.

30.     As part of the deal, Mosaic and True West also obtained warrants to acquire Hollandia stock any time in the next 10 years. They did not pay anything up front for the warrants. They treated the warrants as part of their consideration, in addition to the 14% PIK interest, for financing the ESOP. The warrants carried nominal exercise prices that would allow them and their co-investors to pay no more than $783,000 to acquire up to 39% of Hollandia's total outstanding stock in the future.[2] But because less than half of the ESOP's shares were scheduled be allocated to employees by the time the warrants expired, the deal actually gave Mosaic and True West the opportunity to acquire more than 70% of Hollandia's unencumbered equity.

31.     The Investor Defendants also obtained control of the company by belts and suspenders. Mosaic and True West obtained positions on Hollandia's board of directors, which were filled by Defendant Mohler and Defendant Douglas. The rest of the board consisted of Hollandia's CEO and CFO and supposed "outside directors" nominated by Mosaic and True West. As shown later, however, Mosaic and True West had functional control of Hollandia's board through their ability to manipulate board appointments and reconfigure the board as needed.

32.     In addition to board control, the Investor Defendants also entered into a management agreement with Hollandia. The management agreement granted Mosaic and True West an additional $150,000 per year for management services to the company. On information and belief, the management agreement provided the Investor Defendants additional levers to control both the company and the ESOP,

_____

[2] Hollandia's 2021 financial statements filed with the Securities and Exchange Commission in connection with the 2022 sale of the company (*infra* ¶ 54) identify the range of warrant exercise prices as $0.01 to $1.80 per share for 434,819 shares. The aggregate exercise price therefore could have been as low as $4,348.

including the authority to direct or decline capital transactions involving the company and the disposition of the ESOP's stock.

33. These terms were all accepted on behalf of the ESOP by GreatBanc as the ESOP's trustee. GreatBanc was appointed to its position as ESOP trustee by the Investor Defendants and could be removed at their discretion. GreatBanc's legal duty was to act as a fiduciary of the ESOP and protect the interests of ESOP participants.

34. GreatBanc is constrained by its limited resources relative to the number of companies it owns as the trustee of numerous ESOPs. As a practical matter, GreatBanc relies on outside advisors to perform its fiduciary duties, and it is common for the lawyers and other advisors assisting GreatBanc to spend more time on a transaction—and receive higher fees—than GreatBanc. It was therefore material that the Investor Defendants installed their partner Zeller as the ESOP's legal counsel, who advised GreatBanc to accept the Hollandia ESOP terms. It was also material that the Investor Defendants did not disclose to GreatBanc that Zeller was their partner despite this severe conflict of interest.

35. GreatBanc relied on Zeller's advice and purported independence in approving the Hollandia ESOP deal, not knowing that Zeller was an investor in Mosaic and ButcherJoseph. GreatBanc failed to perform an adequate investigation of Zeller's purported independence. By recommending approval of the Hollandia ESOP deal despite the unfavorable terms that were designed to strip away equity in the company the ESOP was purchasing and provide no meaningful return to ESOP participants, Zeller failed to exercise the care and loyalty to the ESOP that was required as the ESOP's lawyer.

36. Zeller enjoyed two forms of pecuniary gain as a result of his participation in the scheme. First, he benefited from the income and capital gains generated by his investments in ButcherJoseph and Mosaic. Second, he received referrals from ButcherJoseph to act as the ESOP's attorney in multiples deals that

generated hundreds of thousands of dollars in legal work for Zeller and MVA. In return, it was expected that Zeller would play the part of the ESOP's lawyer in a manner that created the appearance of diligent and loyal representation while ultimate leading to the ESOP making decisions that advanced the Investor Defendants' interests.

37.     No independent advisor to the ESOP, and no prudent trustee acting on independent advice, would have accepted the Hollandia ESOP terms. The Investor Defendants orchestrated the terms to give themselves an unfair advantage to profit over the ESOP. A prudent and disinterested fiduciary orchestrating or approving the Hollandia ESOP formation transaction would have obtained materially better terms on the ESOP's behalf related to price, interest, warrants, control, and opportunity for gain.

### The ESOP Period

38.     During the ESOP period, the Investor Defendants directed their efforts to maximizing the total return on investment for themselves and their investment partners and disregarded their fiduciary duties to Hollandia's shareholder, the ESOP.

39.     First, the Investor Defendants further cemented and maintained their control of the company. The company's bylaws—which were implemented concurrently with the formation of the ESOP—required the two "outside directors" to comprise a majority of the board's audit and governance committees. In 2017, one of the outside directors resigned. Rather than replace him, the Investor Defendants amended the bylaws to remove the requirement that the audit and governance committees be controlled by outside directors. Zeller failed to advise GreatBanc to reject the amendment as the company's shareholder on behalf of the ESOP.

40.     The one "outside director" remaining on Hollandia's board did not meet the bylaws' "independence" requirement because his ability to exercise independent judgment was impaired. During the ESOP period, the sole "outside director" lived

-9-

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

1.4 miles from Butcher in Missouri and served on multiple boards of Mosaic-controlled companies, for which he received equity participation. On information and belief, discovery will show that there existed sufficient business or personal dealings between Hollandia's sole "outside director" and Hollandia's control group that the board and GreatBanc should have determined that the company had no qualified "outside director."

41.     GreatBanc had statutory authority to enforce or further amend the bylaws, or to remove and replace Hollandia's directors, in order to ensure that the ESOP's interests as shareholder were adequately protected by qualified directors who would promote the interests of the company and its shareholder. However, GreatBanc never attempted to exercise its rights as shareholder to install a qualified board, and Zeller never advised GreatBanc that the ESOP's interests were harmed by the lack of a qualified board. These omissions continued through the termination of the ESOP in April 2022.

42.     Second, the Investor Defendants managed Hollandia's finances to ensure maximum return on their notes, disregarding the interests of the ESOP as the owner of the company's equity. Starting the day of the ESOP formation transaction, it cost the company more than $315,000 per month in PIK interest to delay repaying the Investor Defendants their notes. That cost compounded every month, and by June 2020, the Investor Defendants' PIK interest accrual cost more than $570,000 per month. By that time, by not seeking to refinance any of the Investor Defendants' 14% PIK notes, Hollandia owed the Investor Defendants more than $50 million. The $50 million owed to them was on top of more than $17 million owed to the Investor Defendants' co-investors in the initial takeover of the company in 2015, making Hollandia's total debt more than $67 million.

43.     The Investor Defendants' investment objective is to generate a multiple of invested capital of 2.2x or higher within around five years, the equivalent of a 20%

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

or higher internal rate of return. By declining to direct Hollandia to refinance the Investor Defendants' notes at lower rates through mid-2020, they remained on pace to meet their 2.2x return target. But allowing the company's total debt to balloon to more than $67 million through the accumulation of unpaid interest on 14% PIK notes was bad for the ESOP, as the company equity was valued at just $340,018 in 2020, after the ESOP paid $27 million for it in 2015. The shares allocated to employees were worth only $50,626—an average of $425 per Hollandia employee.

44. Prudent directors and contract managers of Hollandia loyal to its shareholder, the ESOP, would not have allowed the company's PIK interest obligations to erase nearly all equity value of the company after four and half years. If managed properly, Hollandia had the capacity to refinance the Investor Defendants' PIK notes on more favorable terms that would create shareholder value. By declining to do so, the Investor Defendants violated their duty of loyalty to the company and the ESOP under corporate law and converted assets of the company to their own benefit.

45. In June 2020, the Investor Defendants pursued a limited refinance of the company's debt. Their objectives in structuring the limited refinance were self-serving, and the transaction hurt rather than helped the ESOP's equity position. Their goals were to generate a cash payment for part of their accumulated PIK balance and to pay off their co-investors from the ESOP formation transaction. To complete these objectives, the Investor Defendants caused Hollandia to overpay to acquire real estate used by the company and then mortgaged it in a purchase-sale-leaseback transaction. The company recorded a $4.7 million loss on the real estate deal and ended up with more total debt than prior to the transaction. While the deal met the Investor Defendants' goal of paying off their co-investors and provided a cash payment of $11.2 million for themselves, it further diminished the ESOP's equity, which was worth $6,800 by year-end 2020, $1,450 of which was allocated to employees—an

-11-

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

average of just $14 per ESOP participant. And the company still owed the Investor Defendants more than $40 million in 14% PIK notes.

46.    GreatBanc never exercised its legal powers as Hollandia's shareholder on behalf of the ESOP to stop the Investor Defendants from commandeering the company's finances to serve their own objectives at the expense of the ESOP. GreatBanc relied on Zeller for guidance regarding potential legal rights and claims the ESOP could pursue to remedy the Investor Defendants' violations of their fiduciary duties owed under corporate law to Hollandia and the ESOP. Zeller never advised GreatBanc to take action against his co-Defendants because he was their co-conspirator. In failing to advise the ESOP of its legal rights and recommend potential legal action, Zeller violated his duty of care and loyalty to the ESOP.

47.    Third, when Hollandia did create equity value in 2021, the Investor Defendants stole it. Hollandia identified an opportunity to expand its operations by acquiring and developing public land in Georgia. After an incentive grant, Hollandia was able to acquire the land for less than $100,000.

48.    By adding the Georgia development site to its mortgage arrangement, Hollandia had more than enough financing available to build and launch the facility. Although the development costs would further increase Hollandia's debt, the revenue opportunity was substantial. Hollandia expected the new operation to increase the company's reach by 10,000 stores in 35 states and Canada. After accounting for projected revenue from the company's expanded territory, the company's equity had value again.

49.    But the Investor Defendants usurped the value of the Georgia expansion from the ESOP. In May 2021, Defendants awarded themselves a 50% equity stake in the Georgia operation for $6 million. There was far cheaper capital available to Hollandia for the expansion than the Investor Defendants' 50% equity deal. The company had sufficient unused funds available through existing credit agreements

-12-

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

such that it did not need to give up 50% of the Georgia expansion to the Investor Defendants. The company also could have obtained more favorable terms from any number of private debt firms that would not have required the ESOP to give up 50% of the equity. The Investor Defendants awarded the deal to themselves on grossly unfavorable terms for the purpose of diverting value from the ESOP to themselves.

50.     On information and belief, Zeller advised GreatBanc to approve Hollandia's award of 50% of the Georgia expansion to the Investor Defendants, and GreatBanc approved the deal in reliance on Zeller's advice. No prudent and independent advisor and trustee to the ESOP would have accepted the deal given the concession of 50% equity when cheaper capital was available.

## Termination of the ESOP

51.     Concurrent with and continuing after the Georgia deal in May 2021, the Investor Defendants sought an exit opportunity. They wished to cash in all of the interests that they accumulated in Hollandia and return the profits to themselves and their partners on the 5-year timeline they originally set out.

52.     While the Investor Defendants' standard pitch to business owners represents that their goal is to create ESOPs that will continue to operate after the Investor Defendants' notes reach maturity, they in fact look for the most favorable exit terms for themselves without regard to the fate of their ESOPs. The Investor Defendants do not prioritize refinance or recapitalization transactions that preserve the ESOP, and most of the ESOPs that Mosaic creates are terminated within seven years.

53.     The Investor Defendants found their opportunity to exit Hollandia in a company called Local Bounti. Local Bounti is a publicly traded company created in 2021 by the merger of a special purpose acquisition company and its target of the same name. Local Bounti's predecessor was established in Montana in 2018, and the venture was backed by food giant Cargill.

54. The Investor Defendants caused Hollandia to enter a period of confidential due diligence and negotiations with Local Bounti beginning in November 2021, which ended in a definitive agreement for Local Bounti to acquire all outstanding interests Hollandia in March 2022. The deal closed in April 2022.

55. A contingent term of the Local Bounti deal was that the ESOP would be terminated. Accordingly, the ESOP was terminated effective upon closing on or around April 4, 2022.

56. The Local Bounti deal was worth $122.5 million when it closed, of which $92.5 million was paid in cash and $30 million in Local Bounti stock. The Local Bounti stock transferred in the deal was subject to a lock-up agreement and could not be immediately traded.

57. The Investor Defendants negotiated and structured the termination deal in order to maximize their return at the expense of the ESOP. Mosaic and True West cashed in their notes, warrants, accrued management fees, and Georgia equity for more than $75 million in cash and Local Bounti stock, of which more than 70% was paid in cash and the remainder in stock. Including the $11.2 million payment that the Investor Defendants received in 2020 (*supra* ¶ 45), the Investor Defendants generated a multiple of invested capital of more than 2.2x from their investment in Hollandia, better than Mosaic's target.

58. The Investor Defendants' proceeds included more than $12.8 million in cash for their Georgia equity. The Georgia cash alone earned them a 114% return on the $6 million they paid for their Georgia equity just 11 months prior to closing the Local Bounti deal (*supra* ¶ 49).

59. After the Investor Defendants negotiated proceeds for their notes, warrants, management fees, and Georgia interests—and after they further deducted their own service fees such as Zeller's legal fees and GreatBanc's transaction review

-14-

fee—there was little left for the ESOP.[3] The ESOP's total exit package was valued at just $3.1 million at the time of the deal.

60.    Unlike the Investor Defendants who received more than 70% of their proceeds in cash, the ESOP received only 20% of its $3.1 million in cash. The remaining $2.5 million was tendered to the ESOP as shares of Local Bounti stock, subject to the lock-up agreement.

61.    The Investor Defendants did not prudently and independently advocate for a fair deal for the ESOP in the termination transaction. They prioritized Mosaic and True West's interests in Hollandia despite acquiring those interests in breach of their fiduciary duties to the company and ESOP. They failed to inform GreatBanc of the usurpation of business opportunities that had taken place in Georgia, or their disloyal failure to refinance any of the seller notes with exorbitant interest rates. They treated the ESOP inequitably in regard to the portion of its proceeds payable in cash. Mosaic and True West and their representatives did not disclose to GreatBanc Zeller's partnership interest in Mosaic.

62.    Zeller advised GreatBanc to approve the ESOP termination deal, and GreatBanc approved the deal in reliance on Zeller's advice.[4] In connection with its review of the termination transaction, GreatBanc did not undertake to investigate or assert the ESOP's legal claims arising from the Investor Defendants' disloyal treatment of the ESOP in the ESOP formation transaction and during the ESOP period. Zeller never advised GreatBanc to assert the ESOP's claims against Mosaic and True West and their representatives. A prudent and independent advisor and

---

[3] Additional deal proceeds were used to satisfy other company obligations, including the mortgage debt, management incentive plan, and contractual liabilities to the founding family, which are not disputed.

[4] Zeller is listed as the contact for the ESOP, in its capacity as a seller of Hollandia stock, in the Local Bounti purchase agreement filed with the SEC.

-15-

trustee would have asserted the ESOP's claims, but Zeller and GreatBanc did not because Zeller was a Mosaic investor loyal to his business partners.

63.    GreatBanc and Zeller failed to competently challenge the inequitable treatment of the ESOP in regard to the portion of its proceeds payable in cash.

64.    A prudent and loyal fiduciary of the ESOP would have obtained additional proceeds for ESOP participants. The ESOP had substantial leverage due to its legal claims arising from the Investor Defendants' disloyal treatment of the ESOP in the ESOP formation transaction and during the ESOP period, and a competent and independent disclosure, investigation, and negotiation process would have yielded additional value for ESOP participants.

65.    The ESOP continues to hold the proceeds of the Local Bounti deal on behalf of ESOP participants. The terms of the deal required the company to cease all new contributions and cut off membership in the ESOP as of the termination date. But the terms further prohibit distribution of the sale proceeds to ESOP participants until 2027, when all escrow accounts related to the transaction are due to be settled.[5]

66.    During the hold period, the ESOP's proceeds from the deal have deteriorated in value. The $2.5 million in Local Bounti stock awarded to the ESOP in the deal is now worth less than $100,000. Combined with the Plan's cash proceeds, the value of ESOP proceeds awaiting distribution is less than $1 million.[6]

**Post-Termination**

67.    In September 2023, GreatBanc learned for the first time that Zeller had investments in Mosaic and ButcherJoseph at all times that he advised the ESOP.

---

[5] The additional amount of proceeds that may be released to the ESOP from escrow accounts is not known at this time but is not expected to be more than $1 million.

[6] The company filed a statement with the Department of Labor reporting that the Plan's assets were worth $1.7 million as of year-end 2023, but this statement was in error. The statement failed to account for Local Bounti's 1:13 reverse stock split that occurred on June 14, 2023, and therefore overstated the value of the Plan's Local Bounti stock by 13 times.

-16-

68.     Zeller's undisclosed conflict of interest, and his advice favoring the interests of himself and his investment partners over the interests of his client the ESOP, constituted legal malpractice.

69.     GreatBanc continues to act as the ESOP's trustee. GreatBanc was paid more than $27,000 in fees, all paid from ESOP participant accounts, in 2023.

70.     Despite learning of Zeller's undisclosed conflict of interest and continuing to serve and be paid as ESOP trustee, GreatBanc has failed to assert the ESOP's claims against Zeller and MVA for legal malpractice. Given GreatBanc's fiduciary duty to bring litigation when the ESOP has a viable claim to enforce, GreatBanc's failure to assert malpractice claims against Zeller and MVA was a breach of its fiduciary duties to the ESOP.

**Harm to Plan Participants**

71.     The ESOP's participants were entitled to prudent and loyal management of the ESOP's investment in Hollandia's stock in the formation transaction, during the ESOP period, and in the termination transaction. The unfair terms that the Investor Defendants orchestrated and authorized at each step limited the value of the ESOP's investment compared to the value the ESOP would have received had that investment been prudently and loyally managed by the Investor Defendants. The ESOP is entitled to recover the difference from the Investor Defendants and allocate it proportionally to the ESOP's participants.

72.     The amount due to the ESOP is subject to discovery but is preliminarily estimated to exceed $20 million. If the ESOP had prudent and loyal representation, the ESOP would have obtained more favorable terms related to the Investor Defendants' notes, warrants, and fees in the formation transaction, through intervention during the ESOP period, or in the negotiation of the termination transaction. The ESOP also would not have allowed Hollandia to give up 50% of the equity in its Georgia expansion. Additionally, the ESOP would have obtained a

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

higher percentage of its disposition proceeds in cash. All such actions would have increased the value received by the ESOP in the disposition of its Hollandia stock.

73.     The ESOP is also entitled to disgorgement of all profits received by the Investor Defendants as a result of their misconduct, including all income and gains received by Mosaic and True West and their individual agents, and all fees received by Zeller and GreatBanc.

74.     GreatBanc has argued in other litigation that participants in employee stock plans do not have standing because they did not give anything up to participate in the plan. That is wrong on the law, but it is also not true.

75.     Before the ESOP, Hollandia's retirement program provided employer contributions to the company 401(k) plan as part of employees' compensation package. When the Investor Defendants instituted the ESOP, those contributions ceased. The ESOP became the sole retirement benefit funded by the company. Had the ESOP not been instituted, Hollandia would have continued making contributions to employee's 401(k) accounts.

76.     Hollandia made $8.1 million in contributions to the ESOP. These contributions were all used to allocate shares of Hollandia stock to employees. To break even, participants needed to get $8.1 million for their allocated shares. The ESOP has distributed only $18,381 in total to all participants to date, and the total value of ESOP assets held for future distribution to participants is less than $1 million. Defendants not only failed to obtain for ESOP participants the investment return that was available through prudent and loyal management, Defendants lost more than $7 million of contributions as a result of their mismanagement.

77.     Participants are worse off even when compared to Hollandia's pre-ESOP retirement program. Had the company continued its 401(k) employer contributions at the levels in effect prior to the ESOP, Hollandia employees would have earned more than $4.2 million in employer contributions and investment earnings thereon since

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

2015. Instead, they received the ESOP, which was supposed to be a superior retirement benefit aimed at keeping them at the company, but was in fact worse due to the Investor Defendants' mismanagement.

### PLAINTIFFS' LACK OF ACTUAL KNOWLEDGE

78.    Plaintiff Sawlaw managed greenhouse operations and Plaintiff Sholy was a facilities manager at Hollandia. They were not responsible for financial or legal functions. During that time, they did not have actual knowledge of material facts necessary to support their claims, and they did not develop such knowledge until 2024 or 2025. Among other things, they did not know that the Investor Defendants were represented on both sides of all transactions involving the ESOP through Zeller, or that the Investor Defendants directed the company to maintain or enter financing arrangements with the Investor Defendants that were more favorable to the Investor Defendants than arms-length deals available in the marketplace would have been. They trusted the Investor Defendants to manage the company and represent the ESOP in a manner that was consistent with their legal obligations and only recently learned that that did not happen.

### PLAN-WIDE RELIEF

79.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the ESOP to bring an action on behalf of the ESOP to obtain for the ESOP the remedies provided by 29 U.S.C. § 1109(a). Plaintiffs seek recovery on behalf of the ESOP pursuant to this statutory provision.

80.    Plaintiffs seek recovery for injuries to the ESOP sustained as a result of Defendants' fiduciary breaches and prohibited transactions and seek equitable relief on behalf of the ESOP as a whole.

81.    Plaintiffs are adequate to bring this derivative action on behalf of the ESOP, and their interests are aligned with other participants and beneficiaries. Plaintiffs do not have any conflicts of interest with any participants or beneficiaries

-19-

that would impair or impede their ability to pursue this action. Plaintiffs have retained counsel experienced in ERISA litigation and intend to pursue this action vigorously on behalf of the ESOP.

## CLASS ALLEGATIONS

82. Plaintiffs additionally and alternatively seek certification of this action as a class action pursuant to Fed. R. Civ. P. 23.

83. Plaintiffs assert claims on behalf of a Class of participants and beneficiaries of the Plan defined as follows:

> All participants of the Hollandia Produce Group, Inc. Employee Stock Ownership Plan who received or are entitled to vested benefits, and their beneficiaries and alternate payees of record.

84. <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. There are more than 120 members of the Class.

85. <u>Typicality</u>: Plaintiffs' claims are typical of the Class members' claims. Like other Class members, Plaintiffs are ESOP participants entitled to a benefit from the ESOP, and they suffered injuries as a result of Defendants' violations of ERISA. Defendants treated Plaintiffs consistently with other Class members with regard to the ESOP. Defendants' improper actions affected all ESOP participants similarly.

86. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and they have retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their abilities to represent such Class members.

87. <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

-20-

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

A. Whether each Defendant was a fiduciary of the ESOP and the scope of each Defendant's fiduciary duties;

B. Whether Defendants failed to comply with ERISA's fiduciary standards of prudence and loyalty in connection with the ESOP formation transaction, during the ESOP period, or in connection with the ESOP termination transaction;

C. Whether the ESOP formation transaction or ESOP termination transaction included one or more prohibited transactions;

D. The proper form of equitable and injunctive relief; and

E. The proper measure of monetary relief.

88. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

89. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as disgorgement of proceeds of the prohibited transactions and allocation of the proceeds to participants, would be dispositive of the interests of all participants.

90. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described herein applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions

-21-

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of prosecuting complex ERISA claims of this nature. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' actions. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

91.     Plaintiffs and undersigned counsel will provide notice to the Class to the extent required by Fed. R. Civ. P. 23(c)(2) and the Court.

## CAUSES OF ACTION

### Count I

### 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a)

### Breaches of ERISA Fiduciary Duties at the Formation of the ESOP

### *Against Mosaic Capital Investors I, LP, True West Capital Partners Fund II, L.P., Butcher, Mohler, and Douglas*

92.     Plaintiffs incorporate the foregoing by reference.

93.     Mosaic and True West, and their agents Butcher, Mohler, and Douglas, were responsible for orchestrating the ESOP formation transaction from start to finish. They conceived the terms, convinced Hollandia's founding family to transfer the company's stock to an ESOP, and appointed agents and administrators to act on behalf of the ESOP, including Zeller and GreatBanc. They managed the process of creating the ESOP, causing the ESOP to acquire Hollandia's stock, instituting all attendant financial arrangements, installing a governance process, and appointing a new board.

94.     These Defendants were ERISA fiduciaries of the ESOP with respect to the ESOP formation transaction by virtue of their role in causing the appointments of

-22-

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

GreatBanc and Zeller as fiduciaries of the ESOP, and in orchestrating the ESOP formation transaction as a whole. 29 U.S.C. § 1001(21)(A)(i) and (iii); *Chao v. Hall Holding Co.*, 285 F.3d 415, 431 (6th Cir. 2002); *Acosta v. Saakvitne*, 355 F. Supp. 3d 908, 923 (D. Hawaii 2019); *Keach v. U.S. Trust Co.*, 234 F. Supp. 2d 872, 882–83 (C.D. Ill. 2002).

95.     These Defendants' fiduciary duties under 29 U.S.C. § 1104(a)(1) with respect to the ESOP formation transaction included (i) exercising loyalty and care concerning ESOP participants in appointing the ESOP's legal counsel and trustee, (ii) providing the ESOP's trustee with all information needed to fairly evaluate the deal on behalf of the ESOP, and (iii) refraining from making false representations concerning the deal to the ESOP's trustee and sponsoring company, in its capacity as the ESOP administrator. The above-named Defendants were also obligated pursuant to 29 U.S.C. § 1105(a) to remedy, and not enable or conceal, violations of ERISA by other fiduciaries of the ESOP.

96.     These Defendants violated these fiduciary duties by appointing their partner as the ESOP's legal counsel and concealing their scheme to abuse the ESOP in all respects from GreatBanc and Hollandia, including by concealing Zeller's lack of independence and their intention to misuse the control granted to them under the terms of the deal to maximize their own gains at the expense of the ESOP and strip away the ESOP's actual ownership of the business through abusive loan terms, recapitalizations, and usurpation of . But for these wrongful actions and omissions, a prudent ESOP trustee would not have approved the ESOP formation transaction on its terms, nor would have the sponsoring company, in its capacity as the administrator of the ESOP. Due to the Investor Defendants' concealment of their violations, Plaintiff Sawlaw did not discover them until October 2024 and Plaintiff Sholy did not discover the same until April 2025.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

97.     The foregoing ERISA violations by these Defendants resulted in ESOP participants receiving less value from the ESOP and these Defendants receiving undue profits at their expense. The ESOP is entitled to recover losses to the ESOP and profits from these Defendants pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), and to equitably allocate such recovery to ESOP participants.

## Count II

### 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a)

**Breaches of ERISA Fiduciary Duties at the Formation of the ESOP**

*Against Zeller*

98.     Plaintiffs incorporate the foregoing by reference.

99.     Zeller accepted the position of legal counsel to the ESOP for purposes of the ESOP formation transaction notwithstanding his conflicts of interest. He did not disclose those conflicts to the GreatBanc or Hollandia. He performed inadequate due diligence on behalf of the ESOP with respect to the ESOP formation transaction knowing that GreatBanc would rely on his recommendation with respect to whether to enter into the ESOP formation transaction on the terms orchestrated by Mosaic, True West, and their agents. As a functional matter, Zeller exercised "any discretionary authority or discretionary control" concerning the management and disposition of ESOP assets in connection with the ESOP formation transaction and therefore acted a fiduciary of the ESOP in the ESOP formation transaction pursuant to 29 U.S.C. § 1002(21)(A)(i).

100.     Zeller's fiduciary duties under 29 U.S.C. § 1104(a)(1) with respect to the ESOP formation transaction included disclosing his ownership interest in Mosaic and ButcherJoseph to GreatBanc and Hollandia and exercising loyalty and care with respect to ESOP participants in negotiating the deal on behalf of the ESOP. Zeller was also obligated pursuant to 29 U.S.C. § 1105(a) to remedy, and not enable or conceal, violations of ERISA by other fiduciaries of the ESOP.

-24-

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

101.   Zeller violated these fiduciary duties by not disclosing his ownership interest in Mosaic and ButcherJoseph and by failing to negotiate more favorable protections and concessions in favor of the ESOP with respect to his investment partners' notes, warrants, fees, and control of the company and the ESOP. Due to Zeller's concealment of his conflicts of interest in the ESOP formation transaction, Plaintiff Sawlaw did not discover Zeller's violations until September 2024 and Plaintiff Sholy did not discover the same until April 2025.

102.   The foregoing ERISA violations by Zeller resulted in ESOP participants receiving less value from the ESOP and Zeller receiving undue profits at their expense. The ESOP is entitled to recover losses to the ESOP and profits from Zeller pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), and to equitably allocate such recovery to ESOP participants.

## Count III

### 29 U.S.C. § 1104(a)(1)

### Breaches of ERISA Fiduciary Duties at the Formation of the ESOP

### *Against GreatBanc*

103.   Plaintiffs incorporate the foregoing by reference.

104.   GreatBanc was tasked with making the final decision on behalf of the ESOP with respect to enter into the ESOP formation transaction on the terms orchestrated by Mosaic, True West, and their agents. GreatBanc exercised "any discretionary authority or discretionary control" concerning the management and disposition of ESOP assets in connection with the ESOP formation transaction and therefore acted a fiduciary of the ESOP in the ESOP formation transaction pursuant to 29 U.S.C. § 1002(21)(A)(i).

105.   GreatBanc's fiduciary duties under 29 U.S.C. § 1104(a)(1) with respect to the ESOP formation transaction included engaging in a diligent, prudent, and

competent process before determining whether to enter into the ESOP formation transaction.

106. GreatBanc violated these fiduciary duties by relying on Zeller with respect to the ESOP formation transaction without engaging in an adequate inquiry regarding Zeller's qualifications and independence. Due to the concealment of Zeller's conflicts of interest in the ESOP formation transaction, Plaintiff Sawlaw did not discover GreatBanc's violations until October 2024 and Plaintiff Sholy did not discover the same until April 2025.

107. The foregoing ERISA violations by GreatBanc resulted in ESOP participants receiving less value from the ESOP. The ESOP is entitled to recover losses to the ESOP from GreatBanc pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), and to equitably allocate such recovery to ESOP participants.

## Count IV

### 29 U.S.C. § 1106(b)

**Prohibited Transactions with a Fiduciary at the Formation of the ESOP**

***Against Mosaic Capital Investors I, LP, True West Capital Partners Fund II, L.P., Butcher, Mohler, and Douglas***

108. Plaintiffs incorporate the foregoing by reference.

109. For the reasons identified in Paragraphs 94-95, these Defendants acted as fiduciaries of the ESOP in connection with the ESOP formation transaction.

110. Through the ESOP formation transaction, all of these Defendants received consideration for their personal accounts from parties dealing with the ESOP in connection with a transaction involving assets of the ESOP, in violation of 29 U.S.C. § 1106(b)(3). Such unlawful consideration included (among other things) excessive and undue interest, warrants, management fees, and legal fees, or indirect interests in the same.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

111. All of these Defendants further acted in the ESOP formation transaction on behalf of parties with interests adverse to the interests of ESOP participants, in violation of 29 U.S.C. § 1106(b)(2). Due to their concealment of their violations, Plaintiff Sawlaw did not discover them until October 2024, and Plaintiff Sholy did not discover the same until April 2025.

112. The foregoing ERISA violations by these Defendants resulted in ESOP participants receiving less value from the ESOP and these Defendants receiving undue profits at their expense. The ESOP is entitled to recover losses to the ESOP and profits from these Defendants pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), and to equitably allocate such recovery to ESOP participants.

## Count V

### 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a)

### Breaches of ERISA Fiduciary Duties During the ESOP Period

### *Against Mosaic Capital Investors I, LP, True West Capital Partners Fund II, L.P., Butcher, Mohler, and Douglas*

113. Plaintiffs incorporate the foregoing by reference.

114. Mosaic and True West, and their agents Butcher, Mohler, and Douglas, maintained discretionary control of the management and administration of the ESOP, and discretionary control of the management of disposition of ESOP assets, throughout the ESOP period through their control of Hollandia's board, their management agreement with Hollandia, and their power to appoint or remove GreatBanc and Zeller. Accordingly, these Defendants were ERISA fiduciaries of the ESOP during the ESOP period pursuant to 29 U.S.C. § 1001(21)(A)(i) and (iii).

115. These Defendants' fiduciary duties under 29 U.S.C. § 1104(a)(1) during the ESOP period included the obligation to disclose to the ESOP trustee any violations of the fiduciary duties owed under corporate law to the ESOP, as Hollandia's shareholder, committed by Hollandia's board, and any other known

-27-

misconduct that would give rise to a legal claim on behalf of the ESOP. These Defendants were also obligated pursuant to 29 U.S.C. § 1105(a) to remedy, and not enable or conceal, violations of ERISA by other fiduciaries of the ESOP.

116. These Defendants violated these fiduciary duties by failing to disclose to GreatBanc their disloyal conduct, implemented through their control of the board, with respect to maintaining or entering new financing arrangements involving Hollandia that were designed to profit themselves and their partners at the expense of the ESOP, in violation of their duty of loyalty to the ESOP under corporate law. These Defendants further failed to disclose Zeller's legal malpractice in acting as the ESOP's legal counsel in the ESOP formation transaction and on an ongoing basis during the ESOP period. But for these wrongful actions and omissions, a prudent ESOP trustee would have asserted successful legal claims against these Defendants and Zeller on behalf of the ESOP, including for recovery of damages, reformation of contracts, and removal of these Defendants or their agents from Hollandia's board. But for these wrongful actions and omissions, a prudent trustee also would have replaced Zeller with independent legal counsel and replaced Hollandia's board with a qualified independent board that would have sought more favorable financing arrangements calculated to create shareholder value for ESOP participants.

117. The foregoing ERISA violations by these Defendants resulted in ESOP participants receiving less value from the ESOP and these Defendants receiving undue profits at their expense. The ESOP is entitled to recover losses to the ESOP and profits from the Investor Defendants pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), and to equitably allocate such recovery to ESOP participants.

## Count VI

## 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a)

## Breaches of ERISA Fiduciary Duties During the ESOP Period

### *Against Zeller*

118. Plaintiffs incorporate the foregoing by reference.

119. Zeller accepted the position of legal counsel to the ESOP on an ongoing basis during the ESOP period notwithstanding—and indeed, likely because of— his conflicts of interest. He did not disclose those conflicts to GreatBanc. On information and belief, he performed due diligence on behalf of the ESOP with respect to the issuance of equity interests in Hollandia's Georgia expansion to Mosaic and True West knowing that GreatBanc would rely on his recommendation with respect to whether to authorize that transaction on behalf of the ESOP. As a functional matter, Zeller exercised "any discretionary authority or discretionary control" concerning the management of the ESOP and its assets during the ESOP period and therefore acted a fiduciary of the ESOP pursuant to 29 U.S.C. § 1002(21)(A)(i) and (iii).

120. Zeller's fiduciary duties under 29 U.S.C. § 1104(a)(1) during the ESOP period included disclosing his ownership interest in Mosaic to GreatBanc and exercising loyalty and care with respect to ESOP participants in advising GreatBanc with respect to the Georgia deal. Zeller was also obligated pursuant to 29 U.S.C. § 1105(a) to remedy, and not enable or conceal, violations of ERISA by other fiduciaries of the ESOP.

121. Zeller violated these fiduciary duties by not disclosing his ownership interest in Mosaic during the ESOP period and failing to advise GreatBanc to reject the issuance of 50% equity interests in Hollandia's Georgia expansion to Mosaic and True West. But for these failures, a prudent trustee would have replaced Zeller with independent legal counsel and would not have authorized the issuance of 50% equity interests in the Georgia expansion to the Investor Defendants.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

122.    The foregoing ERISA violations by Zeller resulted in ESOP participants receiving less value from the ESOP and Zeller receiving undue profits at their expense. The ESOP is entitled to recover losses to the ESOP and profits from Zeller pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), and to equitably allocate such recovery to ESOP participants.

**Count VII**

**29 U.S.C. § 1104(a)(1)**

**Breaches of ERISA Fiduciary Duties During the ESOP Period**

***Against GreatBanc***

123.    Plaintiffs incorporate the foregoing by reference.

124.    GreatBanc was retained as ESOP trustee throughout the ESOP period by its co-Defendants. In this capacity, GreatBanc was responsible for overseeing and approving annual valuations of the ESOP's Hollandia stock. As the ESOP's trustee, GreatBanc also had a duty to monitor the ESOP's investments, which in this case were made up entirely of Hollandia stock. On information and belief, GreatBanc was also tasked with reviewing and providing consent to Hollandia's issuance of 50% equity interests in its Georgia expansion to Mosaic and True West. GreatBanc exercised "any discretionary authority or discretionary control" concerning the management of the ESOP and its assets during the ESOP period and therefore acted a fiduciary of the ESOP pursuant to 29 U.S.C. § 1002(21)(A)(i) and (iii).

125.    GreatBanc's fiduciary duties under 29 U.S.C. § 1104(a)(1) with respect to the ESOP formation transaction included monitoring the ESOP's investment in Hollandia stock and taking appropriate action as necessary to protect the interests of the ESOP and its participants. GreatBanc's fiduciary duties also included engaging in a diligent, prudent, and competent process before determining whether to grant its consent to self-dealing transactions involving the Investor Defendants, such as the Georgia transaction.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

126.   GreatBanc violated these fiduciary duties by failing to monitor the ESOP's investment to determine whether the company was being managed competently and loyally. GreatBanc further failed to take any action to protect ESOP participants during the ESOP period. By year-end 2020 the value of Hollandia's stock was only $6,800, and GreatBanc had a duty to investigate the circumstances of that decline, including any potential legal claims possessed by the ESOP. Had GreatBanc engaged in a prudent, diligent, and competent investigation, it would have determined that the Investor Defendants were mismanaging the company for their own benefit and that the ESOP had been subjected to legal malpractice by its supposed independent counsel. GreatBanc further would have determined that issuing 50% equity interests in the Georgia expansion to Mosaic and True West was not in the interests of the ESOP, and that less expensive financing available from an independent party should have been used. But by failing to prudently monitor the ESOP's investment, GreatBanc failed to take legal action to protect ESOP participants or to reject further efforts by the Investor Defendants to divert value from the ESOP.

127.   The foregoing ERISA violations by GreatBanc resulted in ESOP participants receiving less value from the ESOP. The ESOP is entitled to recover losses to the ESOP from GreatBanc pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), and to equitably allocate such recovery to ESOP participants.

## Count VIII

## 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a)

## Breaches of ERISA Fiduciary Duties at the Termination of the ESOP

### *Against Mosaic Capital Investors I, LP, True West Capital Partners Fund II, L.P., Butcher, Mohler, and Douglas*

128.   Plaintiffs incorporate the foregoing by reference.

-31-

129.   Mosaic and True West, and their agents Butcher, Mohler, and Douglas, were responsible for orchestrating the ESOP termination transaction. They solicited a buyer of the ESOP's stock, negotiated the terms, agreed to terminate the ESOP, and appointed agents and administrators to act on behalf of the ESOP in approving the deal, including Zeller and GreatBanc. These Defendants also managed the process of allocating proceeds of the deal between themselves and the ESOP.

130.   These Defendants were ERISA fiduciaries of the ESOP with respect to the ESOP termination transaction by virtue of their role in causing the appointments of GreatBanc and Zeller as fiduciaries of the ESOP, and in orchestrating the ESOP termination transaction as a whole. 29 U.S.C. § 1001(21)(A)(i) and (iii); *Chao v. Hall Holding Co.*, 285 F.3d 415, 431 (6th Cir. 2002); *Acosta v. Saakvitne*, 355 F. Supp. 3d 908, 923 (D. Hawaii 2019); *Keach v. U.S. Trust Co.*, 234 F. Supp. 2d 872, 882–83 (C.D. Ill. 2002).

131.   These Defendants' fiduciary duties under 29 U.S.C. § 1104(a)(1) with respect to the ESOP formation transaction included (i) exercising loyalty and care concerning ESOP participants in appointing the ESOP's legal counsel and trustee, (ii) disclosing to the ESOP trustee violations of the fiduciary duties owed under corporate law to the ESOP, as Hollandia's shareholder, committed by Hollandia's board, and any other known misconduct that would give rise to a legal claim on behalf of the ESOP, and (iii) ensuring that the ESOP received a fair allocation of deal proceeds. These Defendants were also obligated pursuant to 29 U.S.C. § 1105(a) to remedy, and not enable or conceal, violations of ERISA by other fiduciaries of the ESOP.

132.   These Defendants violated these fiduciary duties in connection with the ESOP termination transaction by retaining their partner Zeller as the ESOP's legal counsel and failing to disclose his malpractice to GreatBanc. These Defendants further violated these fiduciary duties by failing disclose their disloyal conduct, implemented through their control of the board, with respect to maintaining or

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

entering financing arrangements involving Hollandia that were designed to profit themselves and their partners at the expense of the ESOP, in violation of their duty of loyalty to the ESOP under corporate law. But for these wrongful actions and omissions by these Defendants, a prudent ESOP trustee would have leveraged the ESOP's legal claims to obtain monetary concessions in favor of the ESOP with respect to the allocation of proceeds of the ESOP termination transaction between the ESOP and these Defendants.

133. These Defendants further violated these fiduciary duties by failing to ensure that the ESOP received the same portion of its proceeds in cash as Investor Defendants.

134. The foregoing ERISA violations by these Defendants resulted in ESOP participants receiving less value from the ESOP and these Defendants receiving undue profits at their expense. The ESOP is entitled to recover losses to the ESOP and profits from these Defendants pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), and to equitably allocate such recovery to ESOP participants.

## Count IX

### 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a)

### Breaches of ERISA Fiduciary Duties at the Termination of the ESOP

### *Against Zeller*

135. Plaintiffs incorporate the foregoing by reference.

136. Zeller accepted the position of legal counsel to the ESOP in connection with the ESOP termination transaction, notwithstanding his conflicts of interest. He did not disclose those conflicts to the GreatBanc. He performed due diligence on behalf of the ESOP with respect to the ESOP termination transaction knowing that GreatBanc would rely on his recommendation with respect to whether to enter into the ESOP termination transaction on the terms orchestrated by Mosaic, True West, and their agents. As a functional matter, Zeller exercised "any discretionary authority

-33-

or discretionary control" concerning the management and disposition of ESOP assets in connection with the ESOP formation transaction and therefore acted a fiduciary of the ESOP in the ESOP formation transaction pursuant to 29 U.S.C. § 1002(21)(A)(i).

137.   Zeller's fiduciary duties under 29 U.S.C. § 1104(a)(1) with respect to the ESOP termination transaction included disclosing his ownership interest in Mosaic to the ESOP trustee and exercising loyalty and care with respect to ESOP participants in negotiating the deal on behalf of the ESOP. Zeller was also obligated pursuant to 29 U.S.C. § 1105(a) to remedy, and not enable or conceal, violations of ERISA by other fiduciaries of the ESOP.

138.   Zeller violated these fiduciary duties by not disclosing his ownership interest in Mosaic; failing to advise GreatBanc to assert claims against the Investor Defendants; and failing to negotiate more favorable concessions for the benefit to the ESOP in the ESOP termination transaction.

139.   The foregoing ERISA violations by Zeller resulted in ESOP participants receiving less value from the ESOP and Zeller receiving undue profits at their expense. The ESOP is entitled to recover losses to the ESOP and profits from Zeller pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), and to equitably allocate such recovery to ESOP participants.

## **Count X**

## **29 U.S.C. § 1104(a)(1)**

**Breaches of ERISA Fiduciary Duties at the Termination of the ESOP**

### ***Against GreatBanc***

140.   Plaintiffs incorporate the foregoing by reference.

141.   GreatBanc was tasked with making the final decision on behalf of the ESOP with respect to enter into the ESOP termination transaction on the terms orchestrated by the Investor Defendants. GreatBanc exercised "any discretionary authority or discretionary control" concerning the management and disposition of

-34-

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

ESOP assets in connection with the ESOP termination transaction and therefore acted a fiduciary of the ESOP pursuant to 29 U.S.C. § 1002(21)(A)(i).

142.   GreatBanc's fiduciary duties under 29 U.S.C. § 1104(a)(1) with respect to the ESOP termination transaction included engaging in a diligent, prudent, and competent process before determining whether to enter into the ESOP termination transaction.

143.   GreatBanc violated these fiduciary duties by relying on Zeller with respect to the ESOP termination transaction without engaging in an adequate inquiry regarding Zeller's qualifications and independence. GreatBanc further violated these fiduciary duties by failing to investigate potential legal claims possessed by the ESOP against the Investor Defendants arising from their disloyal conduct and usurpation of business opportunities preceding the ESOP termination transaction that caused the proposed terms for the ESOP termination transaction to unfairly benefit the Investor Defendants at the expense of the ESOP. Had GreatBanc engaged in a prudent, diligent, and competent investigation, it would have determined that the Investor Defendants had mismanaged the company for their own benefit and that ESOP had been subjected to legal malpractice by its supposed independent counsel. GreatBanc further would have determined that issuing 50% equity interests in the Georgia expansion to Mosaic and True West was not in the interests of the ESOP, and that less expensive financing available from an independent party should have been used. A prudent trustee also would have leveraged the ESOP's claims and obtained favorable concessions of deal proceeds from the Investor Defendants. But by failing to engage in a prudent review and negotiation process, GreatBanc failed to obtain additional value that rightly belonged to ESOP participants.

144.   The foregoing ERISA violations by GreatBanc resulted in ESOP participants receiving less value from the ESOP. The ESOP is entitled to recover

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

losses to the ESOP from GreatBanc pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), and to equitably allocate such recovery to ESOP participants.

## Count XI

### 29 U.S.C. § 1106(b)

**Prohibited Transactions with a Fiduciary at the Termination of the ESOP**

***Against Mosaic Capital Investors I, LP, True West Capital Partners Fund II, L.P., Butcher, Mohler, and Douglas***

145. Plaintiffs incorporate the foregoing by reference.

146. For the reasons identified in Paragraphs 130-131 and 134, these Defendants acted as fiduciaries of the ESOP in connection with the ESOP termination transaction and received profits from that transaction.

147. Through the ESOP termination transaction, all of these Defendants received consideration for their personal accounts from parties dealing with the ESOP in connection with a transaction involving assets of the ESOP, in violation of 29 U.S.C. § 1106(b)(3). Such unlawful consideration included (among other things) excessive and undue interest, warrants, management fees, and legal fees, or indirect interests in the same.

148. All of these Defendants further acted in the ESOP termination transaction on behalf of parties with interests adverse to the interests of ESOP participants, in violation of 29 U.S.C. § 1106(b)(2).

149. The foregoing ERISA violations by these Defendants resulted in ESOP participants receiving less value from the ESOP and these Defendants receiving undue profits at their expense. The ESOP is entitled to recover losses to the ESOP and profits from these Defendants pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), and to equitably allocate such recovery to ESOP participants.

-36-

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

# Count XII

## 29 U.S.C. § 1104(a)(1)

## Breaches of ERISA Fiduciary Duties Post-ESOP

### *Against GreatBanc*

150. Plaintiffs incorporate the foregoing by reference.

151. GreatBanc continues to serve as the ESOP's trustee. GreatBanc's powers as ESOP trustee include asserting legal claims on behalf of the ESOP, including claims for legal malpractice under state law.

152. GreatBanc learned in September 2023 that Zeller committed legal malpractice against the ESOP in the ESOP formation transaction, during the ESOP period, and in the ESOP termination transaction. To date, GreatBanc has failed to assert a legal malpractice claim against Zeller on behalf of the ESOP.

153. GreatBanc's failure to assert a legal malpractice claim against Zeller on behalf of the ESOP to date violates GreatBanc's fiduciary duty to act with prudence and diligence for the purpose promoting the interests of ESOP participants.

154. The foregoing ERISA violations by GreatBanc have resulted in the ESOP foregoing a valuable monetary recovery on behalf of ESOP participants. The ESOP is entitled to recover losses to the ESOP from GreatBanc pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), and to equitably allocate such recovery to ESOP participants.

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

## Count XIII

### Legal Malpractice Pre- and Post-ESOP

#### *Against Zeller, MVA, and GreatBanc*

155.   Plaintiffs incorporate the foregoing by reference.

156.   Zeller served as the attorney for the ESOP from the time of its formation beyond the time of its termination.

157.   In his capacity as attorney for the ESOP, Zeller had a duty to disclose all conflicts of interest, render all advice in the exclusive interest of his clients, and exercise the skill, prudence, and diligence that members of the legal profession would exercise under the circumstances.

158.   Because Zeller is a partner of MVA and was acting at all times within the scope of his duties when rendering legal advice to the ESOP, MVA is vicariously liable for Zeller's acts of malpractice.

159.   Though typically the trustee is the only party with standing to bring suit against a third party, "if the trustee improperly refuses or neglects to bring an action against the third person, the beneficiary can maintain a suit in equity against the trustee and third person." *Wolf v. Mitchell, Silberberg & Knupp*, 76 Cal. App. 4th 1030, 1037 (1999). Here, despite knowledge of Zeller's commission of malpractice by virtue of his investments in parties that were adverse to his client, GreatBanc has either neglected or refused to bring a malpractice action against Zeller. Under these circumstances, Plaintiffs have standing to bring suit on behalf of the ESOP for malpractice committed against the ESOP.

160.   Zeller breached his duty of loyalty to the ESOP by failing to maintain fidelity to the client and by taking positions adverse and antagonistic to the ESOP without the informed consent of the ESOP. Zeller failed to exercise the skill, prudence, and diligence that a member of the legal profession by recommending approval of the ESOP formation deal despite its onerous and unfavorable terms, by

failing to advise the trust regarding the usurpation of business opportunities and disloyal management of the company that was undertaken, and by recommending approval of the ESOP termination deal, despite the fact that it treated the ESOP worse than all other investors and resulted in the ESOP receiving nearly none of the proceeds from the company's sale, despite its supposed ownership of Hollandia.

161.    Zeller's breach of his duties to the ESOP resulted in Plaintiffs and the other ESOP beneficiaries losing tens of millions of benefits that otherwise would have accrued to the ESOP.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

  A. Certify Plaintiffs' authority to seek plan-wide relief on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2);

  B. Alternatively, certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as the class representatives, and their counsel as class counsel;

  C. Order Defendants to make good to the ESOP all losses resulting from their violations of ERISA;

  D. Impose a constructive trust or equitable lien or surcharge with respect to, and an accounting of, all proceeds of fiduciary breaches and prohibited transactions received by Mosaic, True West, Butcher, Zeller, Mohler, and Douglas;

  E. Reform the terms of the ESOP formation transaction to impose equitable terms that were projected to create a positive rate of return on the ESOP's investment and to preserve the ESOP's ownership interest in the company it was purchasing;

  F. Reform the terms of the ESOP termination transaction to reflect

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

the amount of equity and assets that the ESOP would have had at the time of the transaction had ESOP formation transaction had terms that advanced the interests of the ESOP, and that provided the same distribution of equity vs. cash as the other sellers that entered into the transaction;

G.     Appoint an independent trustee of the ESOP to oversee the allocation of losses, profits, and proceeds recovered on behalf of the ESOP to ESOP participants consistent with the terms of the Plan and ERISA;

H.     Approve a fair and equitable plan of allocation of any losses, profits, or proceeds recovered on behalf of the ESOP to ESOP participants;

I.     Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g), and/or pursuant to the common fund method;

J.     Award prejudgment and post-judgment interest; and

K.     Award such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

Dated: May 12, 2025          **ENGSTROM LEE LLC**

/s/ Jennifer K. Lee
Jennifer K. Lee, MN Bar No. 0399012*
jlee@engstromlee.com
Carl F. Engstrom, MN Bar No. 0396298*
cengstrom@engstromlee.com
323 N Washington Ave., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
Facsimile: (612) 677-3050

-40-

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)

**MORGAN & MORGAN P.A.**
Marc R. Edelman, FL Bar No. 96342*
medelman@forthepeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 577-4722
Facsimile: (813) 257-0572

Evan Ghaffari, CA Bar No. 337928
eghaffari@forthepeople.com
12300 Wilshire Blvd, Suite 200
Los Angeles, CA 90025
Telephone: (213) 787-8589
Facsimile: (213) 418-3982

*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

-41-

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 2:25-cv-02156 AH (PDx)