| | |
|---|---|
| FORREST  SAWLAW | ) |
| WILLIAM SHOLY | ) |
| LUCAS WARBURTON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )                ORDER |
| | ) |
| MOORE & VAN ALLEN PLLC | ) |
| MOSAIC CAPITAL INVESTORS I, LP | ) |
| KEITH BUTCHER | ) |
| MICHAEL ZELLER | ) |
| TRUE WEST CAPITAL PARTNERS FUND II, | ) |
| L.P. | ) |
| IAN MOHLER | ) |
| GREATBANC TRUST COMPANY | ) |
| IAIN DOUGLAS, | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Defendants' motions to dismiss (Doc. Nos. 120.

122, 123). Defendant GreatBanc filed its motion alone (Doc. No. 120); Defendants Keith

Butcher, Iain Douglas, Ian Mohler, Mosaic Capital Investors I, LP ("Mosaic"), and True West

Capital Partners Fund II, L.P. ("True West") (collectively the "Investor Defendants"), filed their

motion jointly (Doc. No. 122); and Defendants Michael Zeller and Moore & Van Allen PLLC

("MVA") filed their motion jointly (Doc. No. 123). Having considered Defendants' respective

motions and reviewed the parties' arguments, the Court **GRANTS IN PART AND DENIES IN**

**PART** GreatBanc's Motion to Dismiss (Doc. No. 120), **GRANTS IN PART AND DENIES IN**

-1-

**PART** the Investor Defendants' Motion to Dismiss (Doc. No. 122), and **DENIES** Zeller and MVA's Motion to Dismiss (Doc. No. 123).

## I. BACKGROUND

Plaintiffs, who are former employees of Hollandia Produce Group, Inc. ("Hollandia"), are suing Defendants on behalf of Hollandia Produce Group, Inc., Employee Stock Ownership Plan (the "ESOP"), for violations of the Employee Retirement Income Security Act ("ERISA") and legal malpractice. (Doc. No. 85 at 2–3).

In 2015, the Investor Defendants and Zeller reached out to Hollandia's owners about selling the company to its employees through an ERISA-governed ESOP, which operates as a trust for the benefit of the company's employees. (Id. at 6–7). Hollandia's owners agreed to form the ESOP. (Id.). Plaintiffs claim that the Investor Defendants appointed GreatBanc as the ESOP's trustee and installed Zeller, an attorney employed by MVA, as GreatBanc's legal counsel. (Id. at 5). Thereafter, Hollandia's owners contributed $8.1 million to the ESOP for the benefit of the company's employees and sold 100% of their shares of Hollandia stock to the ESOP. (Id. at 6–7). Plaintiffs contend that Hollandia's owners took these actions upon the advice, guidance, and direction of the Investor Defendants and Zeller. (Id. at 6–7).

The ESOP purchased Hollandia's stock for $27 million using a loan provided by Hollandia, which in turn was financed by investors including Mosaic and True West.[1] (Id. at 8). Mosaic and True West each loaned Hollandia approximately $13 million. (Id. at 7). Pursuant to the terms of these loans, Hollandia agreed to pay both companies "paid in kind" ("PIK") interest

---

[1] The ESOP held Hollandia's shares in an unallocated account as collateral and released these shares in proportion to the debt payments made by Hollandia. (Doc. No. 85 at 5).

whereby the accrued interest was added to the principal balance of the loan at the end of each month at an annualized rate of 14%. (Id. at 7–8). Hollandia had the option to pay the interest in cash but instead chose to utilize the PIK interest method. (Id. at 8). These deals also gave Mosaic and True West warrants that allowed them to acquire up to 39% of Hollandia's stock for just $783,000 at any time within the ten-year period following the deal. (Id.).

Plaintiffs contend that the terms of the loans gave the Investor Defendants control over Hollandia's board of directors (the "Board"). (Id.). The loans allowed Mosaic and True West to each appoint a board member. (Id.). Pursuant to this authority, Mosaic and True West appointed Defendants Mohler and Douglas to the Board. (Id.). Other members of the Board included Hollandia's CEO and CFO and two "outside directors" that Plaintiffs allege were nominated by and beholden to Mosaic and True West. (Id.). Additionally, Hollandia entered into a management agreement with Mosaic and True West whereby the two firms could "direct or decline capital transactions involving [Hollandia] and the disposition of ESOP's stock." (Id. at 8–9).

GreatBanc, which could purportedly be removed from its position as trustee at Mosaic and True West's discretion, acquiesced to these terms upon the advice of Zeller. (Id. at 9). Plaintiffs aver that the Investor Defendants installed Zeller as GreatBanc's counsel to exercise further control over Hollandia and the ESOP. (Id.). Zeller was an investor in Mosaic and ButcherJoseph & Co., a consulting firm founded by Keith Butcher—Zeller's former law partner at MVA—and hired by Mosaic to assist in the ESOP's acquisition of Hollandia. (Id. at 9–10). Plaintiffs assert that Zeller did not disclose this purported conflict of interest to GreatBanc, and that GreatBanc unwittingly "relied on Zeller's advice and purported independence in approving

-3-

the Hollandia ESOP deal." (Id. at 9). Plaintiffs further contend that Zeller used his position of confidence to steer profits towards the Investor Defendants at the expense of the ESOP's beneficiaries. (Id. at 9–10).

GreatBanc approved the terms of the loans and the ESOP's formation. Plaintiffs contend that "[n]o independent advisor to the ESOP, and no prudent trustee acting on independent advice, would have accepted the Hollandia ESOP terms." (Id. at 10). Rather, Plaintiffs aver, the ESOP deal was orchestrated to enrich the Investor Defendants at the expense of the ESOP. (Id.).

Thereafter, Plaintiffs assert, the Investor Defendants operated Hollandia with the goal of maximizing their personal return on investment at the expense of the ESOP beneficiaries. When one of Hollandia's "outside directors" resigned, Hollandia failed to replace him and instead changed the bylaws that had required two outside directors to sit on the Board. (Id. at 10). Plaintiffs contend that Zeller failed to advise the ESOP against this change. (Id.). Additionally, Plaintiffs claim that Hollandia's sole remaining "outside director" was not independent, as required by Hollandia's bylaws. (Id.). Plaintiffs note that the director lived close to Butcher in Missouri and "served on multiple boards of Mosaic-controlled companies, for which he received equity participation." (Id. at 10–11). Plaintiffs assert that GreatBanc had statutory authority under ERISA to enforce or amend Hollandia's bylaws to ensure that the ESOP was adequately represented, but it failed to do so. (Id. at 11). Plaintiffs also posit that Zeller failed to adequately advise GreatBanc that the Board was harming the ESOP. (Id.).

Plaintiffs aver that the Board used its power to enrich the Investor Defendants by failing to adequately manage Hollandia's debt. (Id. at 11). Specifically, Plaintiffs state that the Board's failure to pay down the debt it owed to Mosaic and True West in a timely manner resulted in

-4-

ballooning debt payments that cost Hollandia more than $315,000 per month at the start of the loan and over $570,000 per month by June 2020. (Id.). By that point, Hollandia owed Mosaic and True West more than $50 million. (Id.). In contrast, the shares allocated to the ESOP were worth only $50,626. (Id.). Plaintiffs claim that no prudent investor or trustee would have allowed Hollandia's PIK interest payments to accumulate so substantially. (Id. at 12).

Then, Plaintiffs state, when Hollandia did pay off its debts, it did so to the benefit of the Investor Defendants and the detriment of the ESOP. (Id. at 12–13). In June 2020, Hollandia purchased and then mortgaged a piece of real estate it used in its business. (Id.). Hollandia used these funds to pay Mosaic and True West $11.2 million and pay off their co-investors. (Id.). However, Hollandia saddled itself with more debt than it had before the transaction. (Id.). By the end of 2020, the ESOP's equity in Hollandia was worth just $6,800. (Id.). Plaintiffs contend that GreatBanc failed to exercise its powers as Hollandia's shareholder to stop the Investor Defendants from enriching themselves. (Id. at 13). Plaintiffs also claim that GreatBanc relied on Zeller for guidance regarding its legal rights and claims, but that Zeller failed to inform GreatBanc that it could take action against the Investor Defendants because he was conspiring with them to enrich himself at the expense of ESOP. (Id.).

In 2021, Hollandia finally found its footing. Hollandia bought land in Georgia for less than $100,000 and planned to develop a facility that would expand its reach by 10,000 stores in 35 states and Canada. (Id.). The revenue opportunity was substantial and returned value to the ESOP's stake in Hollandia. (Id.). However, Plaintiffs claim that the Investor Defendants "awarded themselves a 50% equity stake in the Georgia operation for $6 million" when there was cheaper capital available elsewhere. (Id. at 13–14). Plaintiffs contend that "Zeller advised

GreatBanc to approve Hollandia's award of 50% of the Georgia expansion to the Investor Defendants, and GreatBanc approved the deal in reliance on Zeller's advice." (Id.). Alternatively, Plaintiffs aver, Hollandia had sufficient funds to complete the project without this new investment. (Id. at 14).

Having finally made Hollandia's stock valuable again, the Investor Defendants sought to cash out on their investment. (Id.). Plaintiffs assert that while the Investor Defendants represent to business owners that they intend to create long-lasting ESOPs, they actually intend to sell and terminate the ESOPs they create within five to seven years. (Id.). Specifically, Plaintiffs claim that "most of the ESOPs that Mosaic creates are terminated within seven years." (Id.). Working on this timeline, Plaintiffs posit, Mosaic and True West cashed in their warrants and caused the ESOP to sell its interest in Hollandia and terminate its existence. (Id. at 15).

The ESOP sold its interest in Hollandia to Local Bounti for $122.5 million. (Id.). Local Bounti paid $92.5 million in cash and the remaining $30 million in stock subject to a lock-up agreement. (Id.). Plaintiffs assert that the Investor Defendants negotiated the deal to maximize their investment. (Id.). Mosaic and True West received more than $75 million in cash and stock—of which more than 70% was paid in cash. (Id.). However, the ESOP walked away with only $3.1 million—of which only 20% was paid in cash. (Id. at 16). The value of Local Bounti's stock has since plummeted, and the ESOP's shares are now worth less than $100,000. (Id. at 17). Plaintiffs assert that GreatBanc relied on Zeller's advice to approve the deal, which closed on April 4, 2022. (Id. at 16).

In total, Plaintiffs argue that Defendants owe the ESOP more than $20 million. (Id. at 18). Plaintiffs note that the ESOP beneficiaries' retirement accounts would be worth

approximately \$4.2 million if the ESOP was never formed.[2] (Id.). But now, the ESOP beneficiaries are expected to receive just \$1 million once the lock-up period expires and the ESOP's funds are distributed. (Id.).

Plaintiffs, who contend that they did not learn of any material facts concerning Defendants' alleged wrongdoing until 2024 or 2025, filed this class action lawsuit on behalf of themselves and other ESOP beneficiaries. (Id. at 20–22).

First, Plaintiffs assert that GreatBanc breached its fiduciary duties under 29 U.S.C. § 1104(a)(1) during the ESOP's formation, operation, termination, and post-termination period. (Id. at 26–38). Plaintiffs are also suing GreatBanc for legal malpractice. (Id. at 39). Plaintiffs claim that GreatBanc first learned of Zeller's conflicts of interest and alleged actions in furtherance thereof in September 2023 but has failed to act on them. (Id. at 17–18).

Second, Plaintiffs assert that the Investor Defendants breached their fiduciary duties to the ESOP under 29 U.S.C. §§ 1104(a)(1) and 1105(a) during the ESOP's formation, operation, and termination. (Id. at 23–37). Additionally, Plaintiffs allege that the Investor Defendants engaged in prohibited transactions under 29 U.S.C. § 1106(b) during the formation and termination of the ESOP. (Id.). Finally, Plaintiffs assert that Zeller breached his fiduciary duties to the ESOP under 29 U.S.C. §§ 1104(a)(1) and 1105(a) during the ESOP's formation, operation, and termination. (Id. at 25–35). Additionally, Plaintiffs contend that Zeller committed legal practice for which MVA is vicariously liable. (Id. at 39–40).

---

[2] Plaintiffs' accounts would be worth far more if Hollandia put its \$8.1 million contribution toward Plaintiffs' 401(k) accounts rather than the ESOP.

Defendants moved to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. Nos. 120, 122, 123).

## II.    STANDARD OF REVIEW

Rule 12(b)(6) authorizes the Court to dismiss Plaintiffs' complaint for failing "to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing that the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). See id.

To survive Defendants' motions to dismiss, Plaintiffs' factual allegations in the complaint need only "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, the complaint must simply "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In analyzing the complaint, the Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). However, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## III. DISCUSSION

### a. GreatBanc

GreatBanc argues that Plaintiffs' claims against it should be dismissed for five reasons: (1) ERISA's statute of repose bars most of Plaintiffs' claims; (2) GreatBanc is not liable for mismanagement by Hollandia's Board; (3) GreatBanc is not liable for failing to sue its co-defendants; (4) Plaintiffs have not alleged any other ERISA violation; and (5) Plaintiffs cannot sue GreatBanc for legal malpractice.

#### i. Statute of Repose

ERISA states in relevant part that

> [n]o action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation[.]

29 U.S.C. § 1113. "[T]he date of the last action which constitute[s] a part of the breach or violation" is inextricably intertwined with the duty Plaintiffs allege GreatBanc breached. See Tibble v. Edison Int'l, 575 U.S. 523, 530 (2015) (stating that "[t]he Ninth Circuit erred by applying a six-year statutory bar based solely on the initial selection of the three funds without considering the contours of the alleged breach of fiduciary duty"). The Court must look beyond the plaintiffs' characterization of their claims and instead look at the true nature of the duty GreatBanc allegedly breached. See id.; David v. Alphin, 704 F.3d 327, 341 (4th Cir. 2013). If the duty is a continuing one, and an alleged breach of that duty occurred within the six-year statute of repose, then the claim is timely. Tibble, 575 U.S. at 530.

GreatBanc relies on <u>David v. Alphin</u> to assert that Plaintiffs' claims based on the ESOP's formation and Hollandia's corporate changes are time-barred because those acts and omissions occurred more than six years before Plaintiffs filed this action. 704 F.3d 327, 341 (4th Cir. 2013). However, <u>David</u> is inapposite. There, the plaintiffs challenged the defendant's selection of certain investments under 29 U.S.C. §§ 1104 and 1106. <u>Id.</u> at 339–41. The defendant asserted that the plaintiffs' claims were untimely because the defendant made the challenged investments more than six years before the plaintiffs filed suit. <u>Id.</u> The court agreed with the defendant and held that the plaintiffs' claims were untimely. <u>Id.</u> at 340. First, the court reasoned that an action pursuant to § 1106 necessarily challenges the prohibited transaction itself and does not implicate any continuing duty that would forestall the statute of repose. <u>Id.</u> at 341. Second, the Court found that the plaintiffs' § 1104 claim challenged the defendant's decision to select certain investments but did not assert that the defendant failed to monitor or remove such investments. <u>Id.</u> at 341–42. Thus, the court held, the plaintiffs failed to assert that the defendant violated a continuing duty sufficient to forestall the statute of repose. <u>Id.</u> at 342.

Plaintiffs' claims here are different; they allege that GreatBanc breached its fiduciary duties by failing to (1) properly investigate and critique the terms of the ESOP's formation and then (2) monitor and manage the ESOP's investment in Hollandia. Although the former may under certain circumstances be classified as a singular transaction, Plaintiffs have alleged sufficient facts to show that GreatBanc's acts and omissions during the formation and life of the ESOP were connected such that they constituted a continuing violation of GreatBanc's fiduciary duties. It is particularly relevant that GreatBanc's initial breach resulted in the Investor Defendants and Zeller having control over the ESOP, which precipitated their later malfeasance

-10-

and GreatBanc's failure to oversee the ESOP's investment in Hollandia. Therefore, viewing the evidence in the light most favorable to Plaintiffs, their claims against GreatBanc are not barred by ERISA's statute of repose.

### ii. Fiduciary Duties under ERISA

### 1. Corporate Mismanagement

GreatBanc contends that it did not have a duty to oversee the business affairs of Hollandia, and that its fiduciary duties were limited to its oversight of the ESOP. (Doc. No. 121 at 10–11). Plaintiffs retort that GreatBanc misapprehends that nature of their claims and emphasize that their claims relate to GreatBanc's failure to protect the ESOP's assets. (Doc. No. 129 at 11).

The South Carolina District Court addressed the same issue in Spires v. Schools, 271 F. Supp. 3d 795, 802–03 (D.S.C. 2017). There, the court stated

> [m]ismanagement or malfeasance by the executives of an operating company is not in itself a breach of fiduciary duty under ERISA. But in this case, the alleged managerial malfeasance is not the alleged breach of fiduciary duty. The alleged breach of fiduciary duty is the failure of the Plan fiduciaries to take action to protect Plan assets by responding to managerial malfeasance that depleted the Plan assets of most of their value. Plaintiffs allege the Fiduciary Defendants failed to take action because they placed their personal interest in self-dealing with Company assets above their fiduciary duty to protect the value of Plan assets. Those allegations are sufficient to state a claim under 29 U.S.C. § 1109 for violation of the fiduciary duties imposed by 29 U.S.C. § 1104(a)(1).
>
> The Piggly Wiggly Defendants further contend Plaintiffs claims fail because the actions allegedly constituting managerial malfeasance were ordinary business decisions. That contention is unavailing. Plaintiffs do not merely allege the Fiduciary Defendants qua corporate management made poor decisions regarding real property leases or other poor business decisions. They also allege the Fiduciary Defendants deliberately colluded to transfer Company assets to themselves, necessarily depleting the value of Plan assets, and as Plan fiduciaries decided not to protect Plan participants because the Fiduciary Defendants' self-interest was adverse to the interests of Plan participants. Under ERISA, employers

-11-

> owe a duty as trustees to avoid placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees of a pension plan.

Spires, 271 F. Supp. 3d at 802–03 (citation modified).

The Court agrees entirely with the District Court of South Carolina's explication. For these same reasons, Plaintiffs sufficiently alleged that GreatBanc violated its fiduciary duties by failing to investigate, oversee, and manage its investment in Hollandia.

It is also worth addressing GreatBanc's argument that it is not the ESOP's "white knight" and has no duty to protect Plaintiffs from Hollandia's bad business decisions. GreatBanc both overstates and understates its role as an ERISA fiduciary.

GreatBanc overstates its role through its straw-man argument that the Court would be imposing on it a duty to protect Plaintiffs from any potential harm by finding that Plaintiffs stated a claim for breach of fiduciary duty. On the contrary, GreatBanc simply had a duty to prudently manage its investment in Hollandia. Plaintiffs stated facts showing that GreatBanc breached this duty by failing to investigate the numerous red flags that the Investor Defendants and Zeller operated Hollandia for their own benefit and at the expense of the ESOP beneficiaries. Thus, the Court is not imposing on GreatBanc the heightened fiduciary duty that it so claims.

At the same time, GreatBanc attempts to understate the duties it owed to the ESOP beneficiaries: GreatBanc states that it has no duty to question actions taken by Hollandia's Board. However, this is simply not true—GreatBanc has a duty to prudently manage its investments and protect the ESOP's assets from managerial malfeasance. See id. The trustee is not supposed to just sit back, go through the motions, and collect checks. Instead, it is supposed to advocate for its plan beneficiaries and ensure that plan assets are maximized for their benefit.

-12-

Accordingly, GreatBanc's argument is mistaken.

### 2. Duty to Pursue Legitimate Claims

GreatBanc contends that it cannot be held liable for failing to institute legal action against the Investor Defendants and Zeller. (Doc. No. 121 at 19). Plaintiffs retort that GreatBanc may be held liable for unreasonably failing to institute legal action and maximize plan assets. (Doc. No. 129 at 15).

A trustee is generally under "no obligation to institute legal action in every circumstance, regardless of the likelihood of success. However, . . . trustees [have] a duty to investigate the possibility of a lawsuit and other options and to make an informed decision whether to pursue any. Failure to do so is a breach of such duty." Liss v. Smith, 991 F. Supp. 278, 290–91 (S.D.N.Y. 1998) (citation modified). Indeed, "as part of their fiduciary duty to make reasonable collection efforts, plan administrators must make a reasonable investigation and decision as to whether to initiate legal action to recover plan assets, such as delinquent contributions." Castaneda v. Baldan, 961 F. Supp. 1350, 1354 (S.D. Cal. 1997); see Harris v. Koenig, 602 F. Supp. 2d 39, 55 (D.D.C. 2009) (stating that "[t]he duties of loyalty and prudence mandated in Section 404(a) of ERISA include the duty to take reasonable steps to realize on claims held in trust" (quotations omitted)).

"When . . . a plan has potential claims against a third party, the trustees have a duty to investigate the relevant facts, to explore alternative courses of action and, if in the best interests of the plan participants, to bring suit." Harris, 702 F. Supp. 2d at 55 (citation modified). ESOP fiduciaries have "an obligation to bring a derivative action if they were aware that the officers and directors of the entities whose stock was held by the ESOP had breached fiduciary duties

-13-

owed their shareholders; that this would require defendants to bring suit against themselves does not relieve them of their fiduciary duties under ERISA." <u>Martin v. Feilen</u>, 965 F.2d 660, 667 (8th Cir. 1992). Whether a decision to pursue or forgo legal action on a potential claim is reasonable "is a question for the trier of fact." <u>Castaneda</u>, 961 F. Supp. at 1354.

Here, Plaintiffs have sufficiently alleged that GreatBanc failed to reasonably investigate the Investor Defendants, Zeller, and Hollandia's Board for breaches of their respective fiduciary duties to the ESOP. Specifically, Plaintiffs alleged that GreatBanc failed to investigate and bring claims against the Investor Defendants and Zeller despite numerous red flags indicating that they breached their fiduciary duties. These red flags included: (1) the original 14% PIK interest rate, (2) the structure and membership of Hollandia's Board, (3) the immediate, precipitous drop in Hollandia's value, (4) the Investor Defendants' takeover of Hollandia's Board, (5) Hollandia's mismanagement of its debt, (6) the real estate transaction that enriched the Investor Defendants but increased Hollandia's debt, and (7) the terms of Hollandia's sale to Local Bounti. GreatBanc quibbles with Plaintiffs' characterization of its actions as "unreasonable," but at this stage of the proceedings, Plaintiffs' alleged sufficient facts to support their allegations, and they must therefore be credited. The ultimate resolution of Plaintiffs' claim is one for the trier of fact, not the Court at the Rule 12(b)(6) stage.

### 3.  Other ERISA Violations

GreatBanc next claims that it did not engage in any other conduct that violated ERISA. (Doc. No. 121 at 20). First, GreatBanc argues that Plaintiffs did not allege facts showing that it failed to inquire into Zeller's qualifications and independence, or that GreatBanc practically <u>could have</u> discovered any such conflicts. (<u>Id.</u> at 20–21).

Expert "advice is not a magic wand that fiduciaries may simply wave over a transaction to ensure that their responsibilities are fulfilled. Rather, a plan trustee must at least show that it (1) investigated the expert's qualifications, (2) provided the expert with complete and accurate information, and (3) made certain that reliance on the expert's advice was reasonably justified under the circumstances." Brundle v. Wilmington Trust, N.A., 919 F.3d 763, 773 (4th Cir. 2019) (citation modified). In determining whether a trustee's reliance on outside experts is reasonable, courts must view the facts as a whole and determine whether Plaintiffs alleged sufficient facts to show that the trustee failed to meet its duty under ERISA to act in the sole and best interest of its beneficiaries. Id. at 774.

Here, Plaintiffs alleged sufficient facts to show that GreatBanc breached its fiduciary duty by failing to investigate Zeller's independence and was, therefore, unjustified in relying on his advice. Plaintiffs assert that Mosaic and True West "installed" Zeller as GreatBanc's counsel even though Zeller had investments in, and preexisting professional relationships with, Mosaic and True West that would call into question Zeller's independence. Then, over the course of the ESOP's existence, Zeller continuously recommended courses of action that favored Mosaic and True West and harmed the ESOP. These facts should have raised GreatBanc's suspicions and caused it to further investigate Zeller's advice and independence. Accordingly, Plaintiffs sufficiently alleged that GreatBanc breached its fiduciary duties by unreasonably relying on Zeller's advice.

Second, GreatBanc asserts that Plaintiffs did not show that it failed to monitor the ESOP's investment in Hollandia and investigate the circumstances surrounding the company's underperformance. (Id. at 21–22). GreatBanc contends that (1) the company's actions were not

facially unreasonable such that GreatBanc had a duty to investigate those actions, and (2) Plaintiffs failed to state specific facts regarding GreatBanc's oversight, or lack thereof.

GreatBanc's argument is essentially a dispute of fact that is not appropriate for resolution at this stage of the proceedings. Plaintiffs alleged that Mosaic and True West controlled Hollandia because they installed loyal directors beholden to them. Plaintiffs also claimed that those directors (1) caused the debt Hollandia owed to Mosaic and True West to double, (2) undertook a real estate transaction that enriched Mosaic and True West at the expense of Hollandia, and (3) cratered the value of Hollandia's stock. Despite these red flags, Plaintiffs aver that GreatBanc sat idly by and failed to investigate Hollandia's underperformance. Accordingly, Plaintiffs sufficiently alleged that GreatBanc breached its fiduciary duties by unreasonably failing to investigate Hollandia's underperformance.

Furthermore, Plaintiffs alleged sufficient facts to show that GreatBanc breached its duty to oversee its investment in Hollandia. A plaintiff need not "describe directly the ways in which [the defendant] breached [its] fiduciary duties; rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior." Allen v. GreatBanc Trust Co., 835 F.3d 670, 678 (8th Cir. 2016) (citation modified). Thus, Plaintiffs do not need to provide information concerning GreatBanc's internal processes or communications. It is sufficient for Plaintiffs to identify (1) clear red flags that should put a reasonable fiduciary on notice of underperformance or misconduct and (2) a lack of action taken by GreatBanc to remedy such underperformance or misconduct. As such, Plaintiffs have sufficiently stated a claim alleging GreatBanc breached its fiduciary duties to the ESOP.

-16-

Finally, GreatBanc posits that it did not breach its fiduciary duties by greenlighting the terms of Hollandia's sale. (Id. at 22–23). "ERISA requires that a fiduciary act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims" of maximizing trust assets. David, 704 F.3d at 332 (internal quotations omitted).

As Plaintiffs note, their claims are broader than GreatBanc recognizes. Plaintiffs claim that GreatBanc failed to prudently negotiate on behalf of the ESOP, resulting in a lopsided deal where the ESOP's beneficiaries received $3.1 million—paid mostly in stock—and the Investor Defendants received approximately $75 million—paid mostly in cash. The ESOP's return was meager and risky, whereas the Investor Defendants' return was exorbitant and relatively safe. Furthermore, there was no reason that the ESOP had to sell Hollandia at all. Indeed, the company had just recently found its footing and had prospects of future profitability. Given the terms of the deal and the Investor Defendants' control over Hollandia, Plaintiffs have sufficiently alleged that GreatBanc breached its fiduciary duties by failing to prudently negotiate the sale with the goal of maximizing trust assets. See id.

### iii. Legal Malpractice

GreatBanc contends that it may not be held directly liable for legal malpractice based on its failure to sue Zeller for legal malpractice. (Doc. No. 121 at 23–24). Plaintiffs respond that it may name GreatBanc as a defendant in its legal malpractice claim under both North Carolina and California law. (Doc. No. at 26–27). Specifically, Plaintiffs argue that "an exception exists under both North Carolina and California law, where the trustee improperly refuses or neglects to bring

-17-

an action against the third person, the beneficiary can maintain a suit in equity against the trustee and the third person." (Id. (citing Slaughter v. Swicegood, 162 N.C. App. 457, 465 (2004), and Wolf v. Mitchell, Silberberg & Knupp, 76 Cal. App. 4th 1030, 1037 (1999)). Both cases cited by Plaintiffs rely on the Restatement (Second) of Trusts § 282. However, Comment e to this section states:

> [i]f the trustee fails to perform his duty to bring an action at law or suit in equity or other proceeding against a third person (see § 177), the beneficiary can maintain a suit in equity against the trustee to compel him to perform his duty. In order to settle the controversy in a single suit and avoid multiplicity of suits, the beneficiary can join the third person with the trustee as co-defendants, and the matter will be disposed of in a single suit.

Restatement (Second) of Trusts § 282, cmt. e (emphasis added).

Thus, under Plaintiffs' own understanding of the law, they may only maintain a legal malpractice action against the trustee "to compel [the trustee] to perform [its] duty" to sue the attorney. See id. Plaintiffs have not done that here. Instead, Plaintiffs seek to hold GreatBanc directly liable for legal malpractice, as though GreatBanc sits in the shoes of Zeller and MVA. Accordingly, Plaintiffs' legal malpractice claim against GreatBanc will be dismissed.

### b. The Investor Defendants

The Investor Defendants argue that Plaintiffs' claims against them should be dismissed for four reasons: (1) Plaintiffs do not have standing to assert their claims; (2) Plaintiffs' claims are barred by ERISA's statute of repose; (3) the Investor Defendants did not owe the ESOP any fiduciary duties under ERISA; and (4) Plaintiffs' complaint is an improper "shotgun pleading" that fails to assert individualized claims against the Investor Defendants.

### i. Standing

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." Thole v. U.S. Bank N.A., 590 U.S. 538, 540 (2020). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan v. Defenders of Wildlife, 504 U. S. 555, 560 (1992)). "The most obvious concrete injuries are 'tangible harms, such as physical harms and monetary harms.'" O'Leary v. Trustedid, Inc., 60 F.4th 240, 242 (4th Cir. 2023) (quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021)).

Given that Plaintiffs are similarly situated to beneficiaries in the private trust context, the law of trusts informs Plaintiffs' ERISA claims. See Thole, 590 U.S. at 542. "In the private trust context, the value of the trust property and the ultimate amount of money received by the beneficiaries will typically depend on how well the trust is managed, so every penny of gain or loss is at the beneficiaries' risk." Id. Accordingly, trust beneficiaries suffer a concrete injury when trust funds are mismanaged, resulting in a monetary loss to the beneficiaries. Wangberger v. Janus Cap. Grp. (In re Mut. Funds Inv. Litig.), 529 F.3d 207, 216 (4th Cir. 2008).

The Investor Defendants first assert that Plaintiffs failed to "plausibly allege" that they harmed the ESOP. (Doc. No. 122-1 at 22). The Investor Defendants do not argue that financial loss does not constitute an injury in fact. Rather, they contest the veracity of Plaintiffs' factual allegations and dispute that they did the things that Plaintiffs claim. For instance, the Investor Defendants claim that they did not appoint Zeller as GreatBanc's attorney, they did not control

Hollandia's Board, and they did not cause the ESOP to sell Hollandia and terminate its existence. (Id. at 22–23). However, at this stage of the proceedings, the Court must take Plaintiffs' well-pled factual allegations as true. See Iqbal, 556 U.S. at 678. As detailed above, Plaintiffs have alleged that the Investor Defendants ran Hollandia for their benefit and financially harmed the ESOP and its beneficiaries. The Investor Defendants will have the opportunity to contest Plaintiffs' factual allegations, but they may not do so at the Rule 12(b)(6) stage.

Next, the Investor Defendants argue that the loans Mosaic and True West gave to Hollandia did not harm the ESOP. Again, the Investor Defendants argument ignores Plaintiffs' factual allegations. Plaintiffs alleged that the loans included terms drastically unfavorable to the ESOP (including a 14% PIK interest rate), Mosaic and True West controlled Hollandia's Board, Hollandia mismanaged debt payments to Mosaic and True West, and Mosaic and True West structured Hollandia's sale for their benefit at the expense of the ESOP. Therefore, Plaintiffs sufficiently alleged that Mosaic and True West's loans harmed the ESOP.

The Investor Defendants also posit that Plaintiffs needed to prove that the terms of the loans were above market by providing the terms of other loans that may have been available to Hollandia at the time of its formation. However, Plaintiffs need not plead facts they do not have access to because "'ERISA plaintiffs generally lack the inside information necessary to make out their claims in details unless and until discovery commences.'" Garnick v. Wake Forest Univ. Baptist Med. Ctr., 629 F. Supp. 3d 352, 367–68 (M.D.N.C. 2022) (quoting Braden v. Wal-Mart Stores, Inc., 588 F. 3d 585, 598 (8th Cir. 2009)). As such, Plaintiffs did not need to allege facts concerning other loans that may have been available to Hollandia. This is particularly true here because Hollandia was not scouring the market for the best loan terms. Rather, the Investor

-20-

Defendants affirmatively approached Hollandia about forming the ESOP and offered the company loans to facilitate its formation. Accordingly, the Investor Defendants' argument is mistaken.

### ii. Statute of Repose

As stated above, ERISA contains a six-year statute of repose. 29 U.S.C. § 1113.[3] Under this statute of repose, "the limitations period begins running when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." David, 704 F.3d at 339 (internal quotations omitted). If the duty is a continuing one, and the alleged breach of that duty occurred within the six-year statute of repose, then the claim is timely. Tibble, 575 U.S. 530.

Here, Plaintiffs sued the Investor Defendants for (1) breaching their fiduciary duties during the ESOP's formation, operation, and termination, and (2) engaging in prohibited transactions under 29 U.S.C. § 1106.

Plaintiffs' first set of claims are timely because they sufficiently alleged that the Investor Defendants violated a continuing fiduciary duty and, thus, the Fourth Circuit's holding in David does not control.[4] Plaintiffs stated that the Investor Defendants took control of the ESOP and converted its assets for their own personal gain in a yearslong scheme beginning with the

---

[3] The Investor Defendants mention that 29 U.S.C. § 1113(b) precludes a plaintiff from bringing suit three years after obtaining actual knowledge of the Investor Defendant's alleged breach, but they do not expressly argue that Plaintiffs had such knowledge. Thus, the Court will not consider the issue.

[4] The Court rejects the Investor Defendants' contention that Plaintiffs' claims simply challenge the terms of the loans that Mosaic and True West made to the ESOP at its formation. Indeed, Plaintiffs identified specific, additional instances in which the Investor Defendants purportedly breached their fiduciary duties to the ESOP, notwithstanding the terms of the original loans.

ESOP's formation and ending with Hollandia's sale and the ESOP's termination. Specifically, Plaintiffs posited that the Investor Defendants saddled the ESOP with crippling debt, took functional control over Hollandia, ignored Hollandia's ballooning debt, made Hollandia take on additional debt to repay Mosaic and True West, called in their warrants, and sold Hollandia on terms favorable to the Investor Defendants once Hollandia's stock had value again. Accordingly, Plaintiffs established that the Investor Defendants violated a continuing fiduciary duty beginning at the formation of the ESOP and lasting through its termination.

However, Plaintiffs' second set of claims are untimely. As stated above, the Fourth Circuit's decision in David squarely held that transaction specific claims under 29 U.S.C. § 1106 do not implicate a continuing fiduciary duty that forestalls the statute of repose. 704 F.3d at 340–42. Therefore, Plaintiffs' 29 U.S.C. § 1106(b) claim relating to the ESOP's formation in 2015 is dismissed.

### iii.  Fiduciary Duties

Under ERISA, "a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a). "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary

authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 405(c)(1)(B)." 29 U.S.C. § 1002(21)(A).

"Fiduciary status is a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss." Wallace v. Int'l Paper Co., 509 F. Supp. 3d 1045, 1052 (W.D. Tenn. 2020) (quotations omitted). Additionally, courts must "liberally construe fiduciary status under ERISA" because it is a remedial statute. Dawson-Murdock v. Nat'l Counseling Grp., Inc., 931 F.3d 269, 278 (4th Cir. 2019).

"Generally, ERISA ties fiduciary responsibilities to a person's actual authority, and therefore, that person is a fiduciary only to the extent that he or she exercises control or authority over the plan." Keach v. United States Trust Co., N.A., 234 F. Supp. 2d 872, 882 (C.D. Ill. 2002) (internal quotations omitted). Those who are "responsible for the selection and retention of plan fiduciaries" are, themselves, fiduciaries—at least to the extent such selection and retention is concerned. Leigh v. Engle, 727 F.2d 113, 134 (7th Cir. 1984); id. "ERISA directs courts to look beyond [the defendants'] formal authority with respect to the plan, . . . and to consider what real authority they had over plan investments by virtue of their having appointed [the trustee] to be administrator[]." Leigh, 727 F.2d at 134 n.33 (citing Fulk v. Bagley, 88 F.R.D. 153, 162 (M.D.N.C. 1980)).

Courts look at the totality of the circumstances surrounding the defendants' control over the ESOP and the trustee. Id.; Keach, 234 F. Supp. 2d at 882–83. In so doing, courts have considered (1) the preexisting relationship between the defendant and the trustee, (2) the role that an individual or entity had in the formation of the ESOP itself, and (3) whether the defendant selected the trustee and appointed consultants to advise the trustee. See Leigh, 727 F.2d at 134

n.33 (noting that the defendant appointed his personal attorney and counsel to his business enterprises to be the administrator of the ERISA plan); Keach, 234 F. Supp. 2d at 882–83 (considering that the defendants (1) conceived of the ESOP transaction and structured the stock purchase plan, and (2) appointed the ESOP's trustee when finding that the defendants "exercised de facto control" over the ESOP).

Here, Plaintiffs have alleged sufficient facts to show that the Investor Defendants are fiduciaries of the ESOP because they allegedly appointed GreatBanc as the trustee and had the power to remove GreatBanc at any time throughout the life of the ESOP. See Keach, 234 F. Supp. 2d at 882–83.

Additionally, Plaintiffs sufficiently alleged that the Investor Defendants' actions fell within the scope of their fiduciary duties throughout the ESOP's formation, operation, and termination.[5] First, Plaintiffs alleged that the Investor Defendants exercised effective control over the ESOP at its inception by initiating its formation, structuring the deal, appointing GreatBanc as the trustee, appointing Zeller (who had a preexisting relationship and financial stake in Mosaic and True West) as GreatBanc's counsel and advisor, and having the ability to remove GreatBanc as trustee. Furthermore, Plaintiffs alleged that the terms of the deal were so unfair that no neutral trustee would have approved them. Specifically, Plaintiffs point to the loans' 14% PIK interest rates, the option for Mosaic and True West to acquire warrants at a significant discount, and the ability of Mosaic and True West to appoint members of Hollandia's

---

[5] In so finding, the Court emphasizes the lenient pleading standard under ERISA. Specifically, the Court recognizes that fiduciary status is a fact-intensive inquiry unfit for resolution at the motion to dismiss stage and acknowledges that fiduciary status must applied liberally.

-24-

Board. These facts support Plaintiffs' contention that the Investor Defendants exercised control over the ESOP's formation and were, therefore, ESOP fiduciaries at its inception. See id.

That the Investor Defendants did not have the ability on paper to control Hollandia at this point in time is of little importance. See id. at 883 (recognizing that "there are situations where the particular circumstances involved causes a fiduciary's liability to extend further than it might appear to extend on paper"). Plaintiffs' claims depend on the existence of backroom, nod-and-wink deals that would not be apparent in any bylaws or articles of incorporation. Requiring the existence of actual authority would defeat ERISA's plain language and purpose. Leigh, 727 F.2d at 134 n.33. Plaintiffs simply needed to allege that the Investor Defendants exercised functional authority or control over the ESOP. See id.; Keach, 234 F. Supp. 2d at 882–83.

Second, Plaintiffs sufficiently alleged that the Investor Defendants exercised functional authority over the ESOP during its operation. Plaintiffs alleged that the Investor Defendants controlled Hollandia through (1) the two directors Mosaic and True West appointed, (2) the third "outside" director that was really beholden to the Investor Defendants, (3) the management agreement Mosaic and True West had with Hollandia, and (4) Mosaic and True West's ability to terminate GreatBanc as trustee of the ESOP. Plaintiffs contend that the Investor Defendants used their control over Hollandia to operate the company for their benefit, and that no neutral and detached fiduciary would have permitted it to so act without further investigation, inquiry, and protective action. Accepting Plaintiffs' allegations as true, Plaintiffs sufficiently alleged that the Investor Defendants had functional authority over the ESOP during its operation. See Keach, 234 F. Supp. 2d at 882.

-25-

Finally, Plaintiffs sufficiently alleged that the Investor Defendants controlled the ESOP during Hollandia's sale and the ESOP's termination. First, Plaintiffs alleged that the Investor Defendants negotiated and structured the terms of the sale, Mosaic and True West exercised their warrants to further cement control over Hollandia, and the Investor Defendants had Zeller recommend that GreatBanc accept the terms of the deal. Second, Plaintiffs alleged that the lopsided terms of the deal are themselves evidence of control because no neutral and detached fiduciary would have approved of them. Third, the timing of the deal is relevant circumstantial evidence of control: the ESOP sold Hollandia's shares the moment the shares regained value, even though the ESOP was under no obligation to sell and Hollandia's future looked bright. Therefore, Plaintiffs have sufficiently alleged that the Investor Defendants exercised functional authority over the ESOP and were ESOP fiduciaries at the time of Hollandia's sale and the ESOP's termination.

### iv. Shotgun Pleading

The Investor Defendants also contend that Plaintiffs' complaint is a "shotgun pleading" because it generally does not differentiate between each of the Investor Defendants and instead treats them as a single actor. "A so-called 'shotgun pleading' occurs when a complaint fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading, or it is virtually impossible to know which allegations of fact are intended to support which claims for relief." Fitzgerald v. Wildcat, 687 F. Supp. 3d 756, 786 (W.D. Va. 2023) (internal quotations omitted). That is not the case here.

First, Plaintiffs alleged generally that the Investor Defendants engaged in a common scheme such that their actions can be attributed to one another. Second, Plaintiffs sufficiently

-26-

articulated what each defendant is charged with and provided a factual basis for those allegations. Plaintiffs' complaint alleged that the Investor Defendants conspired to control the ESOP and loot Hollandia at the expense of the ESOP beneficiaries. Plaintiffs claimed that Mosaic and True West were the main entities behind the scheme and that Mohler and Douglas acted as their agents. As to Butcher, Plaintiffs contend that he controlled Mosaic and, thus, its actions can be attributed to him at this point of the proceedings.

Therefore, Plaintiffs provided "sufficient clarity to allow [each] defendant to frame a responsive pleading." See id.

### c. Zeller and MVA

Zeller and MVA argue that Plaintiffs' claims should be dismissed for four reasons: (1) Plaintiffs lack standing, (2) Zeller is not an ERISA fiduciary, (3) ERISA's statute of repose bars Plaintiffs' claims based on conduct that occurred before 2019, and (4) Plaintiffs' legal malpractice claims are barred by North Carolina's statutes of limitation and repose.

### i. Standing

As stated above, "[i]n the private trust context, the value of the trust property and the ultimate amount of money received by the beneficiaries will typically depend on how well the trust is managed, so every penny of gain or loss is at the beneficiaries' risk." Thole, 590 U.S. at 542. Trust beneficiaries suffer a concrete injury when trust funds are mismanaged, resulting in a monetary loss to the beneficiaries. Wangberger, 529 F.3d at 216.

Here, Zeller and MVA contend that Plaintiffs lack standing because their alleged injuries are "conjectural or hypothetical." (Doc. No. 123 at 8). Specifically, they claim that Plaintiffs

must allege more than bare allegations stating that the they should have received a greater monetary return from the ESOP. (Id.).

The Court rejects the premise of Zeller and MVA's argument. Taken as a whole, Plaintiffs' complaint shows that the Investor Defendants conspired to take over Hollandia via drastically one-sided loan agreements and had Zeller—who had a stake in the operation—advise GreatBanc to accept the deal. The complaint then claims that the Investor Defendants took control of Hollandia's Board and operated the company for the benefit of Mosaic and True West, instead of the ESOP's beneficiaries. These actions included mismanaging Hollandia's debt payments to maximize the Investor Defendants' returns and undertaking a dubious real estate transaction that greatly benefitted the Investor Defendants while saddling Hollandia with more debt than it had before the transaction. Then, once Hollandia's stock finally had value, the Investor Defendants cashed out on terms that were far more favorable to them than they were to the ESOP's beneficiaries.

Zeller and MVA may disagree with Plaintiffs' allegations but, taken as true, Plaintiffs alleged sufficient facts to show that Zeller and his co-conspirators' actions caused the ESOP to be less valuable than it would have been without his alleged misconduct.

### ii. Fiduciary Duties

Zeller and MVA argue that Zeller was not an ESOP fiduciary simply because he was GreatBanc's attorney.

As stated above, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . .

-28-

or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 405(c)(1)(B)." 29 U.S.C. § 1002(21)(A). Courts must "liberally construe fiduciary status under ERISA" because it is a remedial statute. Dawson-Murdock, 931 F.3d at 278. Furthermore, "[f]iduciary status is a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss." Wallace, 509 F. Supp. 3d at 1052 (quotations omitted).

"While an attorney's duty to his client is that of a fiduciary, the mere fact that an attorney represents an ERISA plan does not make the attorney an ERISA fiduciary because legal representation of ERISA plans rarely involves the discretionary authority or control required by the statute's definition of 'fiduciary.'" Custer v. Sweeney, 89 F.3d 1156, 1162 (4th Cir. 1996) (citation modified). Merely advising the fiduciary on legal matters related to the ERISA plan does not give rise to fiduciary status. See id.; Pappas v. Buck Consults., Inc., 923 F.2d 531, 535 (7th Cir. 1991). However, an attorney may still be an ESOP fiduciary if the attorney exercises the "discretionary authority or control required by [29 U.S.C. § 1002(21)(A)]." Custer, 89 F.3d at 1162.

To determine whether a fiduciary's attorney is also a fiduciary of the ESOP, the Court "must discern from [the complaint] the functions that [the attorney] allegedly performed." Id. If the attorney exercised discretionary authority or control over ESOP assets or administration, then the attorney may be a fiduciary of the ESOP itself. See id. at 1162–63; Difelice v. U.S. Airways, Inc., 497 F.3d 410, 418 (4th Cir. 2007); Liss, 991 F. Supp. at 302. Mere influence over the decision-maker is insufficient. Pappas, 923 F.2d at 535.

-29-

The Fourth Circuit's decision in <u>Custer v. Sweeney</u> is instructive. 89 F.3d at 1162. In that case, the plaintiffs argued that the ERISA plan's attorney "transcended the normal legal services rendered by plan counsel" by causing the plan administrators to enter into dubious transactions and deceiving the plan's trustees. <u>Id.</u> The Fourth Circuit determined that the attorney was not a fiduciary because the attorney did not exercise final discretionary authority over transactions or plan administration, even though plaintiffs alleged that the attorney exercised "de facto control" over the transactions and authorized certain expenditures. <u>Id.</u> at 1161, 1163.

Under the exacting <u>Custer</u> standard, Plaintiffs have failed to show that Zeller was a fiduciary of the ESOP solely based on his status as GreatBanc's attorney. Despite Plaintiffs' contention that Zeller usurped GreatBanc's authority over the ESOP's assets, Plaintiffs repeatedly state in their complaint that GreatBanc merely relied on Zeller's purportedly biased advice and adopted his proposed course of action. <u>See</u> (Doc. No. 85 at 9–16). In other words, GreatBanc did not "relinquish [its] independent discretion in investing the [ESOP's] funds." <u>See</u> <u>Custer</u>, 89 F.3d at 1162. Because mere advice and influence do not render an attorney an ESOP fiduciary, Plaintiffs failed to show that Zeller was a fiduciary of the ESOP in his role as GreatBanc's attorney. <u>See</u> <u>id.</u> at 1162–63; <u>Pappas</u>, 923 F.2d at 535.

That being said, Plaintiffs have sufficiently alleged that Zeller was an ESOP fiduciary based on his role as an investor and member of the alleged conspiracy with the Investor Defendants.[6] As stated above, Plaintiffs alleged that the Investor Defendants engaged in a

---

[6] In determining that Zeller is a member of the conspiracy, the Court considers Zeller's efforts as an attorney allegedly taken on behalf of his co-conspirators. Although such actions standing alone are insufficient to render Zeller a fiduciary, those efforts may properly be considered in deciding whether Zeller was a member of the conspiracy.

-30-

coordinated conspiracy to take control of the ESOP and run it for their own personal gain. Zeller—who had an (admittedly small) ownership stake in Mosaic—was a member of the conspiracy and helped exercise authority over the ESOP alongside the other Investor Defendants. Accordingly, Zeller was an ESOP fiduciary for the same reasons that the Investor Defendants were ESOP fiduciaries.

### iii. Statute of Repose

Zeller and MVA argue that Plaintiffs' claims are barred by ERISA's six-year statute of repose. At this stage of the proceedings, the Court will deny Zeller and MVA's arguments for the same reasons that the Court denied the Investor Defendants' statute of repose arguments.

### iv. Legal Malpractice

North Carolina imposes a three-year statute of limitations and four-year statute of repose on legal malpractice actions.[7] N.C. GEN. STAT. § 1-15(c). The statute "accrue[s] at the time of the occurrence of the last act of the defendant giving rise to the cause of action." Id. However, if the defendant causes the plaintiff monetary loss under circumstances making the loss not readily apparent to the plaintiff and the plaintiff reasonably does not discover the loss until more than two years thereafter, the plaintiff may file her action a year after discovering such loss. Id. This exception is nevertheless cabined by the four-year statute of repose, which serves as an absolute bar to legal malpractice claims. Id.

---

[7] It is unclear whether North Carolina law applies to Zeller's representation of GreatBanc. Zeller and MVA argued that it does, and Plaintiffs assumed that it does for the sake of argument. Thus, the Court will follow Plaintiffs' lead and assume that North Carolina law applies to the representation.

When the last act giving rise to a cause of action occurred is a factual question. <u>Chase Dev. Grp. v. Fisher, Clinard & Cornwell, PLLC</u>, 211 N.C. App. 295, 305 (2011). "To determine when the last act or omission occurred[,] we look to factors such as the contractual relationship between the parties, when the contracted-for services were complete, and when the alleged mistakes could no longer be remedied." <u>Carle v. Wyrick, Robbins, Yates & Ponton, LLP</u>, 225 N.C. App. 656, 661 (2013). "[A]n attorney's duty to a client is . . . determined by the nature of the services he agreed to perform." <u>Hargett v. Holland</u>, 337 N.C. 651, 656 (1994). For instance, "[a]n attorney who is employed to draft a will and supervise its execution and who has no further contractual relationship with the testator with regard to the will has no continuing duty to the testator regarding the will after the will has been executed." <u>Id.</u> The last act giving rise to the loss, as opposed to the representation giving rise to the loss, is the relevant point from which the statute runs. <u>Carle</u>, 225 N.C. App. at 660 (stating that "[c]ontinued representation after the last act giving rise to the claim does not toll or extend the statute of repose").

Here, it is premature to decide the disputed factual issue of when the last act giving rise to Plaintiffs' claim occurred. Plaintiffs alleged that Zeller failed to inform GreatBanc of his conflicts of interest and subsequently rendered improper legal advice in a yearslong scheme to enrich himself and his business partners. Thus, Plaintiffs contend that each individual act of malpractice was in furtherance of the last: (1) Zeller advised GreatBanc to accept dubious loans from companies Zeller is connected to and approve an agreement allowing those companies to control Hollandia; (2) Zeller failed to advise GreatBanc that Hollandia's Board was improperly constituted and not independent; (3) Zeller advised GreatBanc to approve the 2021 real estate transaction that enriched Zeller and the Investor Defendants at the expense of Hollandia and the

-32-

ESOP; and (4) Zeller advised GreatBanc to approve the sale of Hollandia, and the termination of the ESOP, on terms that more than doubled Mosaic and True West's investments but cost the ESOP's beneficiaries millions. Zeller and MVA, however, contend that Zeller's representation was more limited and that each event described above was separate and independent.

Given the fact-intensive nature of the statute of limitations issue and the contested scope of Zeller's representation, it is too early at this stage of the litigation to determine whether Plaintiffs' legal malpractice claims against Zeller and MVA are barred by North Carolina's statutes of limitations and repose. Accordingly, Zeller and MVA's motion to dismiss Plaintiffs' malpractice claim is denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** GreatBanc's Motion to Dismiss (Doc. No. 120), **GRANTS IN PART AND DENIES IN PART** the Investor Defendants' Motion to Dismiss (Doc. No. 122), and **DENIES** Zeller and MVA's Motion to Dismiss (Doc. No. 123).

### ORDER

**IT IS, THEREFORE, ORDERED** that GreatBanc's Motion to Dismiss (Doc. No. 120) is **GRANTED IN PART AND DENIED IN PART**, the Investor Defendants' Motion to Dismiss (Doc. No. 122) is **GRANTED IN PART AND DENIED IN PART**, and Zeller and MVA's Motion to Dismiss (Doc. No. 123) is **GRANTED IN PART AND DENIED IN PART**.

-33-

Signed: March 2, 2026

Max O. Cogburn Jr
United States District Judge

-34-