**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| FORREST SAWLAW, WILLIAM SHOLY, and LUCAS WARBURTON, as the representatives of a class of similarly situated persons, and on behalf of the Hollandia Produce Group, Inc. Employee Stock Ownership Plan,<br><br>Plaintiffs,<br><br>v.<br><br>MOSAIC CAPITAL INVESTORS I, LP, TRUE WEST CAPITAL PARTNERS FUND II, L.P., KEITH BUTCHER, MICHAEL ZELLER, IAN MOHLER, IAIN DOUGLAS, MOORE & VAN ALLEN PLLC, and GREATBANC TRUST COMPANY,<br><br>Defendants. | Case No. 3:25-cv-00624-MOC-SCR |

**BRIEF IN SUPPORT OF THE LENDER DEFENDANTS' PARTIAL MOTION TO DISMISS GREATBANC'S SUPPLEMENTAL CONTINGENT CROSSCLAIMS**

At the outset, it bears repeating that no Defendant—not the Lender Defendants,[1] not GreatBanc, and not the MVA Defendants[2]—asserts that any other Defendant violated ERISA or any standard of professional conduct. All Defendants agree that:

- Hollandia Produce Group, Inc. chose to create its ESOP to benefit its employees;
- There was no scheme to act against the ESOP's interests;
- Mosaic, True West, and other lenders provided financing on market terms reviewed and approved by GreatBanc, its financial advisor, and the Small Business Administration;
- That financing kept Hollandia out of bankruptcy after it lost its largest customer shortly after the ESOP was formed;
- GreatBanc made its own informed and prudent decisions as trustee; and
- The Lender Defendants did not, individually or collectively, control Hollandia or GreatBanc at any point.

Though Plaintiffs managed to survive the motion to dismiss by lobbing untrue and salacious accusations, discovery will show them for what they are. Nevertheless, out of an abundance of caution, GreatBanc Trust Company ("GreatBanc") has asserted contingent crossclaims against certain Lender Defendants—that is, in the unlikely event the Court finds Defendants are liable, GreatBanc believes the other Defendants, not it, should be held responsible.

---

[1]Ian Mohler, Iain Douglas, Mosaic Capital Investors I, L.P. ("Mosaic"), and True West Capital Partners Fund II, L.P. ("True West").

[2] Moore & Van Allen PLLC ("MVA") and Michael Zeller.

Four of GreatBanc's five contingent crossclaims are legally deficient. Specifically, Counts One, Three, Five, and Six against the Lender Defendants do not adequately state a claim for relief and so must be dismissed.[3] *First*, Count One of GreatBanc's crossclaims alleges that Mohler and Douglas breached "corporate fiduciary duties," but fails to identify the legal source of those duties, and, in any event, the claim is pre-empted by ERISA. *Second*, Count Three fails to state a claim, because Plaintiffs did not allege facts supporting a claim for equitable relief under 29 U.S.C. § 1132(a)(3), and GreatBanc's crossclaim adds no additional allegations to support the claim. *Third*, the Court lacks subject matter jurisdiction over Counts Five and Six, because claims for indemnification and contribution are not ripe until after a judgment has been entered against the party seeking contribution or indemnification.

## BACKGROUND

Hollandia Produce Group, Inc. ("Hollandia") was a California-based agricultural company founded in the 1970s by the Overgaag family. Second Am. Compl. (Dkt. No. 85, "SAC") ¶ 22. In 2015, Hollandia chose to convert the company to Hollandia Produce Group, Inc. Employee Stock Ownership Plan (the "ESOP"). Hollandia's board selected and engaged GreatBanc to serve as the ESOP's trustee, and GreatBanc selected Zeller, a member of MVA, to serve as its legal advisor. *Id.* ¶¶ 16–17; *see also* Cross-Cl. (Dkt. No. 148 at 54–67) ¶¶ 6, 11–12. To date, GreatBanc remains "the independent trustee for the [ESOP's] Trust, which holds relevant assets." Cross-Cl. ¶ 6.

Hollandia and GreatBanc negotiated the terms of the ESOP's 2015 purchase of Hollandia. SAC ¶ 28. Hollandia obtained financing from Mosaic, True West, and other lenders, who are not

[3] The Lender Defendants do not move to dismiss Count Two or Count Four (which is asserted only against the MVA Defendants).

named in this action. Cross-Cl. ¶¶ 9–10. As is typical for mezzanine lenders, the agreement between GreatBanc and Hollandia permitted Mosaic and True West each to appoint one member to Hollandia's seven-person Board after the 2015 ESOP transaction closed. Mosaic chose Mohler, and True West chose Douglas as directors. *Id.* ¶¶ 7–8.

Plaintiffs brought the underlying putative class action against GreatBanc, the Cross-Defendants, and Keith Butcher alleging, among other things, that Defendants breached their ERISA fiduciary duties and engaged in prohibited transactions. SAC ¶¶ 93–155. GreatBanc denies that any other Defendant committed any wrongdoing, and every other Defendant denies that GreatBanc committed any wrongdoing. Nevertheless, out of an abundance of caution, GreatBanc asserted crossclaims in its capacity as the trustee' of the ESOP. Cross-Cl. ¶ 4. They are contingent crossclaims brought "in the alternative to its denial of liability and on a contingent basis, in the event the Court finds GreatBanc" or the Cross-Defendants liable for the wrongdoing alleged by Plaintiffs. *Id.*

GreatBanc alleges five causes of action against the Lender Defendants:

- Count One: Common law breach of fiduciary duties against Mohler and Douglas;
- Count Two: Violations of ERISA under 29 U.S.C. §§ 1104(a)(1), 1105(a), and 1106(b);
- Count Three: ERISA non-fiduciary liability under 29 U.S.C. § 1132(a)(3);
- Count Five: indemnification; and
- Count Six: contribution.

*Id.* ¶¶ 27–53. Those claims are based primarily on GreatBanc's interpretation of Plaintiffs' allegations: that the Lender Defendants "were *de facto* fiduciaries of the ESOP . . . because they used Mohler and Douglas's positions on" Hollandia's Board of Directors "to corrupt a third Board member, seize effective control of Hollandia's operations . . . , install an attorney who was

purportedly loyal to Mosaic and True West . . . , and thus covertly steer the ESOP against its interests." *See, e.g.*, *id.* ¶ 28. The claims are also based on GreatBanc's interpretation of Plaintiffs' allegations to be that "Cross-Defendants violated their ERISA duties on multiple occasions," including by knowingly participating in prohibited transactions." *Id.* ¶¶ 29–30. GreatBanc makes clear that it "has not seen evidence or information" that would "substantiate this claim." *Id.* ¶ 28.

In its Answer, GreatBanc denies all claims against it and that it engaged in "any wrongdoing." *See, e.g.*, Answer (Dkt. No. 148 at 2–56) ¶¶ 18–20, 34–36, 40–41, 65, 72–75. GreatBanc also denies Plaintiffs' allegations that all Defendants, including the Lender Defendants, engaged in "wrongdoing," "concealment," "manipulation," or "disloyalty." *See, e.g.*, *id.* ¶¶ 18–21, 23–27, 43–46, 94–98, 110–112, 115–118, 130–135, 147–150.

## LEGAL STANDARD

The Court must dismiss an action under 12(b)(6) unless it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is only plausible if it is supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations raising only "the mere possibility of misconduct," *id.* at 679, or a speculative right to relief, *Twombly*, 550 U.S. at 555, are insufficient.

Though the Court must construe facts in the light most favorable to the nonmovant, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citation omitted). "[N]aked assertion[s] devoid of further actual enhancement'" are insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the "allegations on the face of the complaint, taken as true, [must] allege facts sufficient to invoke the jurisdiction of the [] court." *Taliaferro v. Darby Tp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). "The plaintiff has the burden of proving that subject matter jurisdiction exists" by a preponderance of the evidence. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "The 'ripeness' requirement originates in the 'case or controversy' constraint of Article III, and presents a 'threshold question [ ] of justiciability.'" *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (quoting *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 195 (4th Cir. 2013)). Under "[t]he doctrine of ripeness," a court cannot hear a cause of action until it "is presented in 'clean-cut and concrete form.'" *Miller v. Brown*, 462 F.3d 312, 318–19 (4th Cir. 2006).

## ARGUMENT

### I. Count One Fails to State a Claim for Breach of Corporate Fiduciary Duties Against Mohler and Douglas.

Count One asserts a contingent breach of corporate fiduciary duties claim against Mohler and Douglas, alleging that "[i]f the Court finds that Mohler and/or Douglas violated those duties, and/or that GreatBanc is liable for failing to detect or pursue legal and financial remedies related to the alleged wrongdoing of Mohler and/or Douglas, it follows that Mohler and/or Douglas violated their fiduciary duties of loyalty and prudence." Cross-Cl. ¶ 23. But GreatBanc fails to state a claim for breach of corporate fiduciary duties for two reasons. *First*, GreatBanc does not identify the law under which it brings its breach of fiduciary duty claim. *Second*, the claim is pre-empted by ERISA.

### A. GreatBanc Fails to Refer to Any Controlling Law.

GreatBanc asserts a claim for corporate breach of fiduciary duties against Mohler and Douglas. But GreatBanc does not state whether the source of the duties is state or federal, common law or statutory, much less point to any specific legal source. This "failure to specify the source of common law . . . impedes the court's ability to determine if a viable cause of action has been pled," and therefore, the court must dismiss such unspecified claims. *United States v. Premier Med., Inc.*, No. 18-cv-165, 2023 WL 9060896, at *14 (D.S.C. Sept. 28, 2023); *see also Moore v. EO Prods., LLC*, No. 22-cv-07618, 2023 WL 6391480, at *9 (N.D. Cal. Sept. 29, 2023) ("At the risk of stating the obvious, the Court cannot assess the adequacy of a claim without knowing which jurisdiction's law to apply."); *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018) ("[D]ue to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal.").

The issue is not academic. GreatBanc purports to bring a "direct" claim, presumably as a shareholder representative, against Hollandia's former board members. *See* Cross-Cl. ¶ 24. Certain jurisdictions disallow such a claim following dissolution of the corporation, and certain jurisdictions impose a statute of limitations that would cut off any relief. *See, e.g.*, *Jogani v. Jogani*, 118 Cal. App. 5th 823, 856 n.6 (2026) (noting that, in California, "[b]reach of fiduciary duty is generally governed by the residual four-year statute of limitations in Code of Civil Procedure section 343, but the limitations period may vary depending on the gravamen of the claim"); *Hale v. China Online, Inc.*, No. 08-cv-5548, 2009 WL 2601357, at *2 (N.D. Ill. Aug. 21, 2009), *aff'd sub nom. Hale v. Victor Chu*, 614 F.3d 741 (7th Cir. 2010) ("[U]nder Delaware law, dissolution of a corporation terminates an individual's status as a shareholder of the corporation and therefore bars the individual from bringing a derivative action on behalf of the dissolved corporation.").

The Lender Defendants cannot defend themselves against such an inadequately defined claim. The Court should dismiss Count One against Mohler and Douglas.

**B. ERISA Pre-empts the Breach of Fiduciary Duty Claim.**

ERISA contains an express pre-emption clause providing that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). In enacting ERISA, Congress "intended to ensure that plans . . . would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990).

"A [state] law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983) (internal citations omitted). That includes both statutory and common law. *See Griggs v. E.I. DuPont de Nemours & Co*., 237 F.3d 371, 378 (4th Cir. 2001).

State laws "may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans or the effect is only indirect." *McClendon*, 498 U.S. at 139 (internal citations omitted). "A contrary rule would undermine ERISA's important policy of promoting uniformity in employee benefit laws, reflected in the legislative history, in the Act's declaration of policy, and in the pre-emption clause itself, by creating the potential . . . for conflicting employer obligations and variable standards of recovery." *Powell v. Chesapeake and Potomac Tel. Co. of Va.*, 780 F.2d 419, 422 (4th Cir. 1985) (internal citation and quotation omitted); *see also Hall v. Bayer Cropscience, LP*, No. 15-cv-07589, 2015 WL 5838577, at *3 (S.D.W. Va. Oct. 5, 2015) ("Underlying the complete pre-emption doctrine is the notion that the federal policies implicated by a federal statute are sufficiently important to override the plaintiff's effort to rely on state law." (internal citation and quotation omitted)).

Although GreatBanc purports to bring a "direct action" for breaches of Mohler and Douglas's "corporate fiduciary duties owed to Hollandia and its stockholder, the ESOP," the claim is based on "Plaintiffs allegations . . . that Mohler and Douglas acted specifically to injure the ESOP and direct funds to Mosaic that should have gone to the ESOP," Cross-Cl. ¶ 24, and thus, are directly related to the plan.

Courts have repeatedly held that common law breach of fiduciary duty claims that directly implicate ERISA plans, like Count One, are pre-empted by ERISA. *See, e.g.*, *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 99 F.4th 928, 956 (7th Cir. 2024) (holding that ERISA pre-empted a common law breach of fiduciary claim because "[t]he state-law duties that [the plaintiff] accuses the directors and officers of breaching are the same duties he charges them with breaching in his ERISA claims . . . ," making the "state-law claim against the directors and officers little more than an 'alternative enforcement mechanism,' and alternative enforcement mechanisms have a connection with (and therefore relate to) ERISA plans"); *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999) ("Common law breach of fiduciary duty claims are clearly preempted by ERISA."); *Martone Constr. Mgmt., Inc. v. Thomas A. Barrett, Inc.*, No. 23-cv-450, 2023 WL 7489951, at *12 (D. Md. Nov. 13, 2023) (dismissing a common law breach of fiduciary claim as pre-empted by ERISA where it was "not based on any state laws of general applicability; rather, it implicates the relations among traditional ERISA plan entities including the Plan fiduciaries . . . and beneficiaries"); *Conner v. Associated Radiologists, Inc.*, No. 19-cv-00329, 2020 WL 762858, at *10 (S.D.W. Va. Feb. 14, 2020) (holding a common law breach of corporate fiduciary duties claim based on allegations that a plan's "assets were improperly managed" were pre-empted by ERISA). Accordingly, the Court should dismiss Count One.

## II. Count Three Fails Because GreatBanc Does Not Sufficiently Allege Facts to Support Its Claim.

Count Three alleges that the Lender Defendants are "culpable non-fiduciar[ies] pursuant to 29 U.S.C.A. § 1132(a)(3)." Plaintiffs did not bring a claim under Section 1132(a)(3)—nor did they plead facts that would support each of the elements of such a claim. GreatBanc's crossclaim does not allege any additional, specific facts to fill the gap, and it therefore fails to state a claim.

The Supreme Court first acknowledged non-fiduciary claims under Section 1132(a)(3) in *Harris Tr. and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000). As the Court held, where an ERISA fiduciary causes a plan to enter into a transaction in violation of section 1106(a), section 1132(a)(3) authorizes a cause of action against non-fiduciaries who received "ill-gotten [plan] assets" in the transaction. *Id.* at 247–51.

To make out a claim under Section 1132(a)(3), a plaintiff must show an underlying breach of Section 1106—in other words, that a fiduciary transferor, "with actual or constructive knowledge of the facts satisfying the elements of a § [11]06(a) transaction, caused the plan to engage in the transaction." *Id.* A plaintiff must then show that a non-fiduciary transferee of plan property "had actual or constructive knowledge that rendered the transaction unlawful," and "caused the plan to engage in the transaction." *Id.* at 250–51. The remedy under Section 1132(a)(3) is imposition of "a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same." *Id.*

For a court to impose a constructive trust, a plaintiff must show that the property can "clearly be traced to *particular* funds or property in the defendant's possession." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (emphasis added). If, instead, "'the property . . . or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an

equitable lien upon other property of the [defendant].'" *Id.* at 213–14 (alterations in original) (citing Restatement of Restitution § 215, Comment a, at 867).

Put simply, to make out a claim under Section 1132(a)(3), GreatBanc is required to plausibly allege facts that support the conclusion that (1) some other fiduciary (not the Cross-Defendants) engaged in a prohibited transaction with actual knowledge that it was unlawful; (2) that the Lender Defendants knew they were receiving ill-gotten gains and caused the fiduciary to enter into a prohibited transaction; and (3) that the *specific* "tainted" funds the Lender Defendants received from Hollandia are traceable to funds held by the Lender Defendants, have not been dissipated, and therefore are subject to disgorgement via a constructive trust.

GreatBanc does not allege those elements in its crossclaim. First, it does not identify an alternative breaching fiduciary—it denies that it was one, and Count Three assumes that all of the Cross-Defendants were non-fiduciaries. Second, GreatBanc does not allege that each of the separate Lender Defendants knew of and participated in the underlying unlawful breach. Third, GreatBanc makes no allegations regarding the existence of the *res* of the supposed misappropriation. That deficiency is highlighted by GreatBanc's failure—really, Plaintiffs' failure, which GreatBanc adopts—to distinguish among any of the Cross-Defendants: there is no specific allegation related to specific property held by any specific Cross-Defendant. Each of these three failures is independently fatal to Count Three, which must be dismissed.

## III. Counts Five and Six Are Not Ripe and Should Be Dismissed Without Prejudice

GreatBanc asserts claims for indemnification and contribution against the Lender Defendants. Cross-Cl. ¶¶ 42–53. GreatBanc contends that "an ERISA fiduciary is entitled to indemnification and/or contribution from a culpable co-fiduciary, consistent with common-law trust principles that ERISA borrows heavily from." *Id.* ¶¶ 45, 51.

GreatBanc might be able to assert these claims in the future, but not now. A "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated." *Scoggins*, 718 F.3d at 270 (4th Cir. 2013) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Claims for indemnification and contribution are not ripe "where no judgment for damages has been rendered against the party seeking contribution or indemnification" because the claims rest on the mere potentiality of future liability—an event that may not occur (and one that GreatBanc argues against). *Empresa Lineas Maritimas Argentinas S.A. v. United States*, 730 F.2d 153, 158 (4th Cir. 1984); *see also Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019) (noting "before any determination of liability," a court "risk[s] issuing an advisory opinion" on a contribution or indemnification claim). This principle has also been applied specifically to claims for indemnification and contribution among ERISA co-fiduciaries. *See, e.g.*, *Urological Surgery Pro. Ass'n v. Fecteau Benefits Grp., Inc.*, 359 F. Supp. 2d 24, 26 (D.N.H. 2005).

Accordingly, because no adverse judgment has been entered against GreatBanc, or any Defendant, the indemnification and contribution claims against the Lender Defendants are not ripe and should be dismissed.

**CONCLUSION**

For the above reasons, the Court should dismiss Counts One, Five, and Six of GreatBanc's Supplement Contingent Crossclaims as against the Lender Defendants.

April 24, 2026

/s/ *Lars C. Golumbic*
Lars C. Golumbic*
Andrew Salek-Raham*
Shai D. Bronshtein*
Benjamin J. Koenigsfeld*
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, NW, Ste 1200
Washington, D.C. 20006
(T) 202-857-0620

(F) 202-659-4503
lgolumbic@groom.com
asalek-raham@groom.com
sbronshtein@groom.com
bkoenigsfeld@groom.com

**appearing pro hac vice*

Grant M. Wills
N.C. Bar No. 58443
FORD HARRISON, LLP
6000 Fairview Road, Ste 1415
Charlotte, NC 28210
(T)980-282-1909
(F)980-282-1949
gwills@fordharrison.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2026, I electronically filed the foregoing document via CM/ECF, which caused a true and correct copy to be served electronically upon all entitled parties.

/s/ *Lars C. Golumbic*
Lars C. Golumbic

**CERTIFICATE OF ARTIFICIAL INTELLIGENCE USE**

I hereby certify that no artificial intelligence was employing in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in Westlaw. I further certify that every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

/s/ *Lars C. Golumbic*
Lars C. Golumbic